ARTHUR BURRELL v. W. J. B. ADAMS ET AL.

No. 2156. Decided March 22, 1911.

**1.—Practice in Supreme Court—Refusal of Writ of Error.**

After appellant who failed to recover a part of the land sued for has applied for a writ of error upon the rulings relating thereto and it has been refused, he can not have such question reviewed upon writ of error obtained by appellees against whom he had recovered. (P. 185.)

**2.—Trespass to Try Title—Recovery—Damages for Waste.**

Where defendants had judgment for land sued for and for value of timber cut thereon, a reversal and rendition for plaintiffs of the judgment for part of the land so recovered and on which part of the timber in question was cut requires a reversal and remand of the recovery for the timber. (Pp. 185, 187.)

**3.—Trespass to Try Title—Limitation—Acknowledgment of Tenancy.**

Plaintiffs showing title unless defeated by limitation, an acknowledgment in writing by the ancestor of defendants that he held as tenant of plaintiffs, the evidence being undisputed that it referred to the land in question and there being none to establish that his possession had ripened into title before such acknowledgment was made, was sufficient to defeat the claim by limitation and require a peremptory charge or a rendition of judgment for plaintiff on appeal. (Pp. 185-187.)

**4.—Same.**

Until title is acquired by limitation the character of the possession by the

family of the land of another is subject to the husband's control and he may recognize it as tenancy under and possession by the true owner. (Pp. 186, 187.)

Error to the Court of Civil Appeals, First District, in an appeal from Jasper County.

Adams and others sued Burrell and others for the recovery of land. Plaintiffs had judgment for a part of the land. As to part—two tracts of 160 acres each—recovery was denied and they appealed. The judgment against them as to a part of this—the Bilbo 160 acres—was affirmed and their application for writ of error was refused. As to a part—the F. W. Burrell 160 acres—judgment was reversed and rendered for appellants and upon this appellees obtained writ of error.

*Goodrich & Synnott* and *Smith & Blackshear,* for plaintiff in error.
—Art. 940, Rev. Stats.; Arts. 1316 (as amended 1903, p. 55), 1317, 1332 and 1333, Rev. Stats.; Root v. Baldwin, 52 S. W., 586; Robertson v. Kirby, 25 Texas Civ. App., 472; Scott v. F. & M. National Bank, 66 S. W., 485; Casey-Swasey Co. v. Manchester Fire Association Co., 32 Texas Civ. App., 158; Railway v. Kellerman, 39 Texas Civ. App., 274; Blair v. Baird, 43 Texas Civ. App., 134; Gonzales v. Galveston, H. & S. A. Ry. Co., 107 S. W., 896; Roegan v. Bruff, 49 Texas Civ. App., 226; Kalteyer v. Mitchell, 110 S. W., 462; Joske v. Irvine, 91 Texas, 574; Mitchell v. Mitchell, 80 Texas, 112; Cole v. Crawford, 69 Texas, 127-128; Alstin v. Cundiff, 52 Texas, 461, Bk. 2, Tx. Notes, 1023; Parker v. Nusbaumer, 21 Texas Civ. App., 182; San Antonio & A. P. Ry. Co. v. Hahl, 83 S. W., 27; San Antonio & A. P. Ry. Co. v. Votaw, 81 S. W., 130.

*W. W.* and *Roi Blake* and *Ira P. Hildebrand,* for defendant in error.
—During the accrual of the ten years' period of limitation, the husband has absolute control over the character of the possession of land, and may sign an acknowledgment of tenancy. Texas & N. O. Ry. Co. v. Speight, 94 Texas, 356; Hurley v. Lockett, 72 Texas, 266.

Mr. Justice Ramsey delivered the opinion of the court.

This was an action of trespass to try title instituted in the District Court of Jasper County by W. J. B. Adams, R. F. Adams and Abel Adams against Arthur Burrell, several persons who were the heirs at law of F. W. Burrell, including his wife, T. A. Bilbo, R. C. Conn and R. B. Richie, to recover the title and possession of the William Duncan survey of 640 acres of land. There was claimed by Arthur Burrell only 320 acres of this land, being the South half of the survey. Bilbo claimed 160 acres in the N. E. corner thereof and those claiming under F. W. Burrell set up title to 160 acres in the Northwest corner of the survey. The following plat, showing such several claims, may aid in the ready comprehension of the disposition made and to be made of the case. [Plat on next page.]

Conn and Richie sought to recover the value of certain timber cut by defendants in error from the two 160-acre tracts, pending the suit, which had come into their possession by reason of certain sequestration proceedings. On a trial had in the District Court defendants in error

recovered the South half of the land sued for. The heirs at law of F. W. Burrell obtained judgment for the 160 acres claimed by them and a similar judgment was rendered in favor of Bilbo for the 160 acres situated in the Northeast corner of the survey. Conn and Richie obtained judgment against the three Adams for $3,200, the value of the timber cut by them, *pendente lite,* from the tracts adjudged to belong to Bilbo and the Burrells. This was reduced by remittitur filed by Conn and Richie to the sum of $2,770.

On appeal the Court of Civil Appeals for the First Supreme Judicial District affirmed the judgment as to Bilbo, reversed the judgment of the District Court as to the Burrells and rendered judgment in favor of defendants in error against the Burrells as to the 160-acre tract in the Northwest corner of the tract claimed by them and reversed and remanded the judgment as to the issue of damages claimed by Conn and Richie. This judgment, therefore, disposes of every issue sought to be litigated except the claim of Conn and Richie and if it is to stand, disposes of that claim in so far as it seeks a recovery for timber cut from the F. W. Burrell 160-acre tract. Since they claim under the Burrells, and if they fail in their title to the land, manifestly no suit can be maintained for the value of the timber growing thereon. At a former day of the term the Adams made application to this court for a writ of error, seeking a review of and relief against the judgment rendered, affirming the correctness of the recovery of the 160 acres in the Northeast corner of the original survey by Bilbo. This application was by us refused. We can not, therefore, as urged now to do in this case, review the correctness of that portion of the judgment of the Court of Civil Appeals.

The defendants in error W. J. B., R. F. and Abel Adams exhibited a perfect title to all the land in controversy and, unless defeated by limitation, were entitled to recover against all the defendants all the lands in suit. That F. W. Burrell went upon the land claimed by his heirs at law some time in 1889 or 1890 is shown by all the testimony as well as the fact that he and his representatives continued to reside upon it until the institution of this suit which was, as shown by the record, March 24, 1908. However, on the 3d day of August, 1899, he executed and delivered to R. F. Adams, one of the original plaintiffs, the following instrument:

" 'The State of Texas,
    County of Jasper.

Know all men by these presents: That I, Frederick Burrell, of the county of Jasper, and State of Texas, do hereby acknowledge that I am now occupying and living upon the following described tract of land, to wit: 160 acres of land, situated in the county of Jasper and State of Texas, about six or seven miles in an easterly direction from Wiess Bluff; said 160 acres tract having been surveyed within the boundaries of an original survey known as the ............ survey of ...... acres; that I went into possession of said land on the .... day of September, 1888, with the consent and permission of R. F. Adams, as his tenant; that I have ever since said date continuously occupied said tract of land, and am now occupying the same as a tenant of said R. F. Adams, who resides in the county of Jasper and State of Texas, and I hereby admit and acknowledge that the said tract of land is the property of the said Adams, that I have no interest in said land, save as a tenant of the said Adams, as aforesaid.

" 'Witness my hand this the 3d day of August, A. D. 1899.

" 'Frederick Burrell.' "

It was shown beyond dispute and without controversy that this document related and referred to the identical tract of land on which he then resided and which his heirs at law now claim. Unless we can regard as evidence the recital in this instrument that Burrell took possession of this land in 1888, then beyond doubt none of the evidence of any of the parties, viewed from the most favorable standpoint for the plaintiffs in error, shows possession by him at a time ten years before his express recognition of holding in subordination to Adams. We think this written acknowledgment that his possession was as tenant of Adams is conclusive of any claim by limitation, unless, by other testimony, it could be shown that when executed his possession had already ripened, under the law, into title. At any time before the completion of the ten years term, the husband could by an instrument such as the one here proven, wholly change the character of his possession. In the case of Texas & N. O. Ry. Co. v. Speights, 94 Texas, 350, in discussing a question quite similar to this, this court said:

"It is urged that their claim, having originated during the first marriage, was their separate property, and that a title acquired by the possession would have been theirs and could not be affected by the acts or declarations of her husband. We need not determine what would have been the character of the title had it ever been acquired by limitation, since, in our opinion, the effect of the transaction is the same whether such title would have been separate or community property. No title had been acquired by limitation, and in order to mature one it would have been necessary to give effect to the possession held after the marriage and before Speights was convicted. After he became the head of the family Speights held and controlled the possession, and its character, as adverse or not, depended on his action. Neither Mrs. Speights nor her child had any possession distinct from his, and hence both must avail themselves of that posses-

sion in order to acquire any title to the property. The plaintiff, being the true owner, had the right to deal with him as the party in possession, and when, by his transactions, he destroyed its adverse character, nothing was left upon which the statute could operate. In the case of Allen v. Read, 66 Texas, 20, it was said: 'The husbands of Mrs. Thompson and Mrs. Jeffus were in possession of the lands claimed by their wives as their separate estates, at the time the suit of Fisher, guardian, was brought against them and others, and while the wives could not by that action be affected in their title or right to possession, yet the possession which their husbands held for them ceased to be, within the meaning of the law, a peaceable possession, as would it had the action been against their tenants in possession. Read v. Allen, 6 Texas, 180, 194; Read v. Allen, 58 Texas, 382; McKelvain v. Allen, 58 Texas, 388.' With equal truth it may be said in this case that while Speights' acts could not have affected any title which his wife and her child may have had, yet, as they had none, but must rely on Speights' possession to acquire one by limitation, when he changed his attitude towards the true owner and agreed to purchase its title, that possession ceased to be adverse. This becomes obvious when it is reflected that had he completed his purchase and obtained plaintiff's title, his possession would have been a rightful one, held in his own right, and there could have been no holding adverse to his by other members of the family. This doctrine is clearly set forth in Hurley v. Lockett, 72 Texas, 262. See also LaMaster v. Dickson, 91 Texas, 593."

It follows, therefore, that, under the evidence, the Burrells had not acquired title to this 160-acre tract and that judgment was properly rendered in favor of the Adams against them. It follows, of course, as to the value of timber cut from this land, Conn and Richie can recover nothing. As to their rights under their purchase from Bilbo, the judgment of the Court of Civil Appeals will not be disturbed. In accordance with the judgment of the Court of Civil Appeals the issue as to the value of timber cut on the Bilbo tract will be remanded to the District Court for proper adjudication; and in respect to all other issues and claims the judgment of the Court of Civil Appeals will be and the same is hereby affirmed.

*Affirmed.*