## TUCKER v. DODSON.  (No. 8711.)

(Court of Civil Appeals of Texas. Dallas. Nov. 11, 1922. Rehearing Denied Dec. 9, 1922. On Second Motion for Rehearing, Jan. 6, 1923.)

**1. Homestead ⬅84—A homestead may be established on land held by tenancy in common.**

A homestead may be established on land held by tenancy in common, provided rights of cotenants are not prejudiced thereby.

**2. Homestead ⬅57(3)—Evidence showed defendant had homestead right in land at time attachment was levied.**

Where plaintiff claimed title through foreclosure of an attachment lien against defendant's one-twentieth interest in the tract and sheriff's deed to his grantor, evidence *held* to show that defendant had a homestead right in the land at the time of the attachment and deed.

**3. Gifts ⬅25—Conveyance by parol gift followed by occupancy is valid.**

A conveyance by parol gift accompanied or followed by occupancy, coupled by valuable improvements on the part of the grantee, is as valid as any other.

**4. Partition ⬅78—Rule for allotting to tenant in common homestead acquired in undivided land, stated.**

A tenant in common, having acquired a homestead interest in an undivided tract of land, has the right in partition to have allotted to him the particular portion improved by him, or such portion of it as is equal in value to his undivided share in the entire tract, exclusive of such improvements.

**5. Homestead ⬅29 — Father, owning homestead right in land, could abandon part thereof to son.**

Where a father asserted a homestead right in an entire tract of land, but abandoned that right as to a small tract which he granted a son, who owned a fee simple in the one-twentieth undivided interest in the land, the son established his homestead thereon by living on it and improving and using it as a home.

**6. Homestead ⬅154—Right to homestead destroyed only by abandonment or conveyance.**

A homestead right, having been fixed, cannot be destroyed otherwise than by voluntary abandonment or proper conveyance.

**7. Homestead ⬅187—Forced sale of homestead to satisfy debt is void.**

A forced sale of a homestead in satisfaction of any character of debt, except such as for which the Constitution expressly rendered it liable, is void.

Appeal from District Court, Rockwall County; Joel R. Bond, Judge.

Suit for partition by J. B. Dodson against W. H. Tucker. From a judgment for plaintiff, defendant appeals. Reversed and remanded on second rehearing.

T. B. Ridgell, of Breckenridge, and E. D. Foree, of Rockwall, for appellant.

H. D. Stimson, of Royse City, and A. H. Mount, of Dallas, for appellee.

HAMILTON, J. This was a partition suit filed by appellee and others against appellant and others for the purpose of effecting a partition of 173 acres of land in Rockwall county, Tex.

The following agreed facts were submitted in the trial court:

"That the defendant, W. H. Tucker, inherited a one-twentieth undivided interest in and to the 173 acres of land described in the original petition filed herein, and was the owner thereof in the year 1909.

"That William Tucker died in January, 1920, and at the time of his death, and for more than 20 years prior thereto, lived upon said 173-acre tract as a homestead; that defendants were living on the land in the years 1908, 1909, 1910, and until now.

"In the year 1909, in a certain suit in the county court of Rockwall county, styled W. P. West v. W. H. Tucker, the plaintiff, S. P. West, obtained a foreclosure of an attachment lien against the said one-twentieth undivided interest of the said W. H. Tucker; and thereafter said one-twentieth interest was sold by the sheriff of Rockwall county to W. P. West, and a sheriff's deed was duly executed and delivered to said W. P. West for said one-twentieth interest; and thereafter said W. P. West sold and conveyed, by deed duly executed, the said one-twentieth interest to the plaintiff, J. B. Dodson. Mrs. W. H. Tucker was not a party to the suit.

"It is agreed that the only issue between the parties herein is whether the said W. H. Tucker and his wife, or either of them, had a homestead interest in said 173 acres of land at the time of the levy of said writ of attachment and the foreclosure of the attachment lien in the county court aforesaid, such as would render said foreclosure and the sheriff's deed thereunder inoperative. This agreement shall in no wise affect the homestead rights and claim of defendants."

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

## Appellant's wife testified as follows:

"My name is Mrs. W. H. Tucker. The defendant, William Tucker, is my husband; he is the son of W. H. Tucker, deceased. I believe that it was in the year 1907 that my husband and I moved on the 173-acre tract. I recall the suit between my husband and Mr. West in the county court. I was picking cotton in the field when they came and attached the land. We were living on the land at that time. My husband's mother was dead when we moved on the land. In 1907, prior to the West lawsuit, we were living about a mile this side of Royse, just across the road from the old Tucker homestead; the public road divided it. We never did measure the land across the road from the homestead; I suppose it was three or four acres; we just had around the house and the pasture there, that Will's father gave us to build on and improve. We did improve the little piece of ground and we built upon it. We never did pay any rent on that 3 or 4 acre tract. My husband and I have three children. We had three at the time we moved on this land. That was all the land we owned then, and is all we own now. We lived on that land 14 or 15 years, or until it was divided in the district court and this tract was set aside to abide the decision in this case. When we first went there, my husband worked 50 acres of the 173-acre tract, and within about 2 years we worked about 80 acres, besides what we had there around the house that we called our home place. My husband did not pay his father any rent on the one-twentieth interest. In 1908 or 1909 when they attached the one-twentieth, I was not made a party to the suit; I didn't know anything about it; I was in the field when they came out there. At that time we were living on the 3 or 4 acre tract of land and cultivating the other land. Will's father had told us to stay there, that he intended for me to have it some day, and I stayed there so we could take care of him. We were living in almost no house at all, and he told us to build, and we went ahead and built with our own money. Will's father said it would be mine some day; he intended for that to be mine, and that is the reason we stayed there and made those improvements. We claimed what Will would get at his father's death of his mother's part. His mother was dead when we married, and we lived in Hunt county, and we moved there with the understanding that we would take care of Will's father and help him. Will's father gave us the 3 or 4 acres to get us to stay there—I didn't want to stay. We built a house, cistern, barn, garage, henhouse, and covered the smokehouse on the land he gave us. I do not remember how much money we spent on improvements; it was something like a thousand dollars, I guess.

"Cross-examination: W. H. Tucker, my husband's father, died January 16th, a year ago. When we first moved on the Tucker place, my husband's father was living in town in a house they had bought there; he moved back to the farm the year after we moved there. There are three residences on the 173-acre tract. W. H. Tucker, Sr., occupied one of those residences, my husband and I occupied another and Ollie Tucker, my husband's brother, occupied the third house. Ollie Tucker was renting from his father, and we were renting part of the land we worked. We paid rent on part of the land we worked. My husband's mother was dead when we moved there, and my husband claimed that he inherited a one-twentieth interest from his mother; that was the division that was had at the former term of this court. My husband had nine brothers and sisters—there were ten of the first wife's children. They inherited half of the property, and Mr. Tucker, Sr., owned the other half. I told Mr. Tucker, Sr., I wouldn't stay there if he didn't fix up for us, and he told me for us to go ahead and fix ourselves, that it would be ours, and that's the way we did it, and that's the only reason we stayed there. My husband and his father had that conversation about giving us the land."

## Appellant testified as follows:

"My name is W. H. Tucker. I am defendant in this cause. This 173-acre tract out of which the 9-acre tract was taken, was the land formerly owned by my father and mother, and at my mother's death I and nine other children inherited her interest in the property. The suit in district court in which my father was awarded this land as a homestead was had before I moved here from Hunt county. I was not a party to that suit, but I helped pay the costs incurred. I think that suit came up about a couple of years before the suit between myself and W. P. West. My brother Ollie lived on the south end of the 173-acre tract, and I lived on the road near the old homestead house. My father and his second wife and children were living in town and Ollie, Chas. Allen, and I lived on the 173-acre tract. Chas. Allen, and I were all renting from my father when this writ of attachment was levied. My father was living on the 173-acre tract when he died in January, a year ago. My father lived in the town of Royse two or three years.

"Cross-examination: The partition suit was brought before I moved out on my father's farm. I moved out there the same year the suit was brought. I had been living in Hunt county, and I moved back to help take care of my father and the place, at my father's request. He was living in Royse at that time. When I first moved there, I lived on the south side of the road and just had a one-room house with an L to it, and we lived in it a couple of years, and my father told us to go ahead and improve it and improve the place and it would be ours. We never paid any rent on that 3 or 4 acres. I was renting some 40 or 50 acres of land from my father besides the 3 or 4 acres on which I did not pay rent. I was in possession of and living on the 3 or 4 acres at the time the writ of attachment was levied. I was living on that land with my family and was claiming it as my homestead. Sometimes I would pay more than the rent on the land other than the 3 or 4 acres I claimed as my own, and sometimes I wouldn't pay as much as the rent. My wife wasn't a party to the suit in the county court. H. D. Woods, of Greenville, represented me; the court instructed the jury. They wouldn't let me answer the question in that suit as to whether I had any more land besides the 3 or

4 acres. They ruled that out, and I was not permitted to present the question of my homestead. I improved 3 or 4 acres that my father gave me by building a garage on it, ceiling and papering a house; I did the work, or hired it done, and my father furnished part of the lumber that built the house. In the division and partition of the land I got a little strip of the 3 or 4 acre piece, and I have moved part of my improvements off the part I didn't get in the division. I did not take any improvements on the 9 acres; that has been set aside since last term of court. The 3 or 4 acres was the only land I owned at that time, and Mr. West knew that my family and I resided on it. I believe Col. Dodson, who bought it, was living in Royse at that time, but he knew that I was living out there. I have heard that Col. Dodson bought out several of the heirs, but I do not know. He owned mine five or six years before I even knew he bought it. I gave notice of my homestead at the time the property was sold; Mr. West bought it in.

"I furnished my father money to pay taxes on the land; I never did render any of the land for taxes. I didn't pay rent on the 4 acres until my father's death; there was an administrator appointed then, and I went to paying rent. Some of this was pasture, and some was a cane patch and garden. The garden was on the north side of the road. My house was also situated on the 3 or 4 acre tract on the south side of the road. I paid rent on the land I planted in corn and cotton, except when I planted some of the small tract he gave me in corn or cotton; then I didn't pay rent on that. My father came to Hunt county to see me about renting the place, and I rented it from him. He didn't say anything about doing any improvements when he said I could have the 3 or 4 acres. I told him there had to be something done, that I couldn't live there any longer, and he said we would get the lumber—he got part of it—and I had the work done. He said it would be mine some day. I expected the improvements placed on it to be that much additional. We still have our claim against the estate in the partition suit. In the suit brought last fall, I made no claim for the improvements I have been talking about."

Other evidence contained in the record need not be stated as essential to our treatment of the case.

The appeal is prosecuted from a judgment rendered upon an instructed verdict.

The only question to be determined is whether or not the one-twentieth undivided interest in the land which appellant inherited from his mother constituted his homestead at the time it was attached by West and at the time of the decree of foreclosure and sale under attachment.

[1] That a homestead may be established upon land held by tenancy in common, provided the just rights of cotenants are not prejudiced, is well settled by the decisions in this state. Clements v. Lacy, 51 Tex. 150; Jenkins v. Volz, 54 Tex. 636; Mfg. Co. v. Swan (Tex. Civ. App.) 43 S. W. 813; Lewis v. Sellick, 69 Tex. 379, 7 S. W. 673; Powell v. Ott (Tex. Civ. App.) 146 S. W. 1020. The prevailing view of authorities as to all jurisdictions which have enacted homestead laws is in accord with that above expressed; the theory being that a homestead may be fixed in lands held in cotenancy because justice and reason will not countenance the deprivation of that interest which a party has on the ground that he has not the whole.

[2] Such being the rule then, under the uncontroverted evidence in appellant's behalf relating to the facts on the homestead feature, the truth of which evidence seems to be conceded by appellee, we think it clear that appellant had a homestead right in the land at the time the attachment was levied, at the time the county court sought to foreclose an attachment lien, and at the time the sheriff's deed was executed to West.

[3, 4] The case falls far apart from the line of decisions holding that a homestead interest cannot be asserted to defeat a title acquired under an attachment foreclosure where the interest is an undivided one in remainder, subject to the existing homestead interest of another. The proof shows conclusively that Tucker had a one-twentieth interest in fee in the tract of land. The evidence also establishes the fact that his father made a parol gift to him and that he went upon the land, occupied it continuously thereafter as a home, making valuable and substantial improvements under the terms of the gift. Since his father owned the homestead estate throughout the tract, as well as fee title to a one-half undivided interest in it, he could convey a portion to another and retain his homestead in that left after making such conveyance. A conveyance by parol gift accompanied or followed by occupancy coupled with valuable improvements on the part of the grantee is as valid as any other. A tenant in common having thus acquired a homestead interest in an undivided tract of land is clothed with the right, when the time for partition arrives, to have allotted to him, in the division, the particular portion of the land improved by him in these circumstances, or such portion of it as is equal in value to his undivided share in the entire tract exclusive of such improvements. Parr v. Newby, 73 Tex. 468, 11 S. W. 490.

[5] Since appellant owned in fee simple a one-twentieth undivided interest in the land, he had the right of occupancy as between himself and all the other joint owners except his father. The latter under his homestead proprietorship alone could deny him occupancy. This homestead right in the father, so long as he desired to exercise it over the entire tract, excluded the assertion of a homestead interest by appellant. But since appellant's father could and did lawfully abandon that right as to the small tract to which he granted appellant all his title, appellant established his homestead, according to the views above expressed, by living upon

it and improving and using it as a home.

[6, 7] The homestead right having been fixed, it could not be destroyed otherwise than either by voluntary abandonment or conveyance joined in by his wife, as provided by law. The title could not be alienated or impaired by any character of forced sale under a court judgment; there being no claim asserted for purchase money, taxes, or improvements. It is well settled that a forced sale of a homestead in satisfaction of any character of debt, except such as for which the Constitution expressly renders it liable, is void. Holland v. Zilliox, 38 Tex. Civ. App. 416, 86 S. W. 36; Sykes v. Speer (Tex. Civ. App.) 112 S. W. 422; Speer & Goodnight v. Sykes, 102 Tex. 452, 119 S. W. 86, 132 Am. St. Rep. 896; Strong v. H. T. Elder & Sons, 59 Tex. Civ. App. 88, 125 S. W. 374.

It follows that no attachment lien ever existed or was legally foreclosed against Tucker's land, and that the sheriff's deed to West was absolutely void and conveyed no right. West, having no title, conveyed no title to Dodson. It is immaterial whether or not either West or Dodson knew of Tucker's homestead right or believed it did not exist. The fact alone that it was such homestead controls, regardless of all other considerations here involved.

The judgment of the trial court is reversed, and judgment rendered for appellant.

Reversed and rendered.

### On Second Motion for Rehearing.

For the first time our attention is called, upon motion for rehearing, to an obscurity in the testimony which renders it at least uncertain that all the land claimed by appellants had been stamped with the homestead character. The proof shows, and the agreed fact is, that appellant W. H. Tucker inherited a one-twentieth interest in 173 acres of land which, by actual computation, would be between eight and nine acres. Both Tucker and his wife testified that the tract in which they asserted a homestead interest, and which they testified was set apart and given to them by Tucker's father as a homestead, and which they improved and lived upon as a homestead, comprehended only three or four acres. Under the view of the law expressed in our original opinion, to which we continue strictly to adhere, of course appellants' homestead right could not exist beyond the area of land to which they acquired a homestead title through the surrender and the accession of title to them by the father of W. H. Tucker out of his homestead tract. Since the evidence fails to fix, definitely, the quantity of land which appellants acquired as a homestead, and since this can be ascertained only by definite proof upon the particular point, it is necessary that the cause be reversed and remanded, which is accordingly done.

Reversed and remanded.