Myrtle McDOUGALL et al., Appellants,

v.

Eugene Phillip McDOUGALL et al., Appellees.

No. 3384.

Court of Civil Appeals of Texas. Eastland.

Sept. 12, 1958.

Rehearing Granted in Part and Denied in Part Oct. 3, 1958.

**296**

Wieser, Kraus & Wieser, Fredericksburg, Ripley E. Woodard and B. L. Templeton, Houston, for appellants.

L. L. Bruhl Llano, Freeman & Ward, Ft. Worth, Looney, Clark, Moorhead & Mathews, Austin, for appellees.

GRISSOM, Chief Justice.

Eugene McDougall and his first wife, Florence, married in 1908. Their son, Eugene Phillip McDougall, was born in 1909. They were divorced in September, 1911, when their child, who will be referred to as Phillip, was two years and seven months old. In June, 1912, Eugene married his second wife, Myrtle, and they lived together until 1927, when Eugene died intestate. Eugene and Myrtle had one child, a girl named Monterey. In 1917, during the marriage of Eugene and Myrtle, they purchased the 673 acres of land involved in this suit. The consideration was $5,-047.50, $1,000.50 paid in cash and a vendor's lien note for $4,047. No part of the principal was paid by Eugene. After his death the note was paid by Myrtle. $3,000 thereof was obtained by her from Eugene's life insurance, which was payable to Myrtle and the balance was acquired by sale of community livestock. On June 2, 1931, Monterey, the only child of Eugene's second marriage, executed a deed to Myrtle which recited that Monterey was "the only child and heir of Eugene McDougall" and that she conveyed to Myrtle an undivided "one-half" interest in a 473 acre tract, which was the 673 acres here involved less 200 acres claimed by Myrtle and her second husband, Walter McDougall (a brother of the deceased Eugene), as a homestead. That deed recited that, "Said interest herein conveyed, being the interest in said tract of land which the said Monterey * * * inherited from her said deceased father, and being all the interest owned

by her in said tract." It was recorded in June, 1931. On May 12, 1942, Monterey executed a deed to Myrtle to "all of my undivided interest in" the 673 acres. It contained the following recital: "it being the intention of the parties herein to convey all of the above described land, particularly that two hundred acres that was excepted in the deed dated June 2, 1931, from C. A. Parker and wife, Monterey Parker, to Mrs. Myrtle McDougall * * * the grantor herein does hereby convey the entire 673 acres as above described." It was recorded in May, 1942.

Immediately after the divorce of Florence and Eugene in 1911, Mrs. Florence McDougall took Phillip, who was then two years and seven months old, to Tarrant County where they have resided since. Eugene and Florence did not live together after their marriage and Phillip testified he did not know anything about his father until 1952, when his mother told him his father was dead and that he, Phillip, owned an interest in his father's land in Kerr County. Whereupon, Phillip consulted an attorney. He filed this suit seeking to establish a one-fourth interest in 673 acres against Myrtle and her second husband and Monterey on December 5, 1952. In 1954, in an amended petition, Monterey joined Phillip as plaintiff and sought to compel Myrtle to reconvey some of the land she had conveyed to her mother. Phillip made the Federal Land Bank of Houston a defendant and sought cancellation of a deed of trust executed by Myrtle so far as it purported to be a lien against Phillip's one-fourth interest. Monterey failed in her suit and Myrtle obtained a judgment against her for breach of warranty and attorney's fees. Monterey has not appealed and the suit as between them need not be discussed. Phillip conveyed half of his fourth interest to his attorney, Freeman, and he joined Phillip as plaintiff, but for convenience they will be referred to as if Phillip sued alone.

The only issues submitted, the instructions in connection therewith and the jury's

answer pertinent to the controversy between Phillip and Myrtle and the bank were as follows:

"Question No. 5.

"Do you find from a preponderance of the evidence that the plaintiff, Eugene Phillip McDougall, knew that defendant Myrtle McDougall was claiming the 673 acres in controversy in this suit adverse to the plaintiff, Eugene Phillip McDougall, or that defendant Myrtle McDougall asserted an adverse possession against the plaintiff, Eugene Phillip McDougall of such unequivocal notoriety that said plaintiff would be presumed to have notice of such adverse claim?

"Answer: 'Yes' or 'No'.

"Answer: 'No'.

"You are further instructed in connection with this special issue that by the term 'Adverse possession' as used in this charge is meant that in order to affect plaintiff Eugene Phillip McDougall with an adverse holding, if any, by the defendant Myrtle McDougall, in this case, notice of such adverse holding, if any, on the part of the defendant Myrtle McDougall must have been brought home to plaintiff Eugene Phillip McDougall, either by information to that effect given to plaintiff Eugene Phillip McDougall or by such acts of unequivocal notoriety in the assertion of such adverse and hostile claim, if any, as would be presumed to put a person of ordinary care and prudence, in the same situation as plaintiff Eugene Phillip McDougall herein was, and under the facts and circumstances in this case, upon notice that the defendant Myrtle McDougall was claiming all title to the land as her own.

"If you have answered the foregoing question No. 5 'Yes', but not otherwise, then answer the following question:

"Question No. 6.

"Do you find from a preponderance of the evidence that the defendant, Myrtle McDougall, had peaceable and adverse possession of the 673 acres as against plaintiff Eugene Phillip McDougall, cultivating, using or enjoying the same, for any period of ten consecutive years between June 2nd, 1931, and December 5th, 1952, the date of filing of this suit?

"Answer 'Yes' or 'No'.

"Answer: ———."

Phillip and the land bank in open court agreed there was no issue of fact to be determined between them and that their controversy should be determined by the court as a matter of law.

Myrtle pleaded the ten year statute of limitation, Vernon's Ann.Civ.St. art. 5510. In the alternative, she sought to recover from Phillip one-fourth of the amount paid by her in discharging encumbrances against the land and paying taxes and one-fourth of the value of improvements made by her. There was no finding as to the amount the improvements enhanced the value of the land, nor was an issue submitted as to any of said matters. The court rendered judgment awarding Phillip and Freeman a one-fourth interest in the land, ordered said land partitioned so as to award the improved homestead 200 acres to Myrtle and decreed that Phillip's interest was free of the lien of the Federal Land Bank. Myrtle and the bank have appealed.

The principal contention of Myrtle McDougall and husband and the bank is that title under the ten year statute of limitation was conclusively established to be in Myrtle McDougall. They say it is undisputed that the 673 acres were acquired by the second community and Myrtle was the owner of a one-half interest and acquired the other half by a warranty deed from Monterey to a one-half interest in 473 acres, recorded in 1931, and a warranty deed from Monterey to the remaining 200

homestead acres, which was recorded in 1942. They say that by virtue of said deeds and proof of exclusive claim of ownership of the whole tract by Myrtle and proof of her possession, use and exclusive occupancy, by uncontroverted evidence, Phillip was charged with constructive notice, as a matter of law, and limitation had run in 1952, when this suit was filed.

The jury found in answer to issue five that Phillip did not know Myrtle was claiming adversely to him and that she did not assert an adverse possession against Phillip of such unequivocal notoriety that it would be presumed Phillip had notice thereof. In Leverett v. Leverett, Tex.Civ. App., 59 S.W.2d 252, 255 (Writ Ref.), the court said:

"The law is well settled that before a cotenant in possession can start the statutes of limitation running against his cotenants it must appear that he had repudiated their title and is holding adversely to it; and notice of such adverse holding must be brought home to them, either by information to this effect given to them by the cotenant asserting the adverse right, or by such acts of unequivocal notoriety in the assertion of such adverse and hostile claim that they will be presumed to have notice of such adverse claim."

Such was the effect of the instruction given in connection with issue five, which was determined against defendant's claim of limitation title.

Appellants point out that, in addition to the deeds from Monterey to Myrtle and the fact that they were promptly recorded in the county where the land lies, there were liens of record against said land executed by Myrtle and that she occupied the land with her second husband from soon after Eugene's death until the present time and paid the balance of the purchase price and taxes and made improvements. They also stress the fact that for more than twenty years there has been of record the affidavits of Monterey

and Myrtle that Monterey was the only child and they the only heirs at law of Eugene McDougall. However, said affidavits were not admitted for that purpose and Myrtle's first point based thereon has been withdrawn. In Wiggins v. Holmes, Tex.Civ.App., 39 S.W.2d 162, 165 (Writ Ref.), it was held that occupancy by one cotenant will be presumed to be in recognition of the common title of all unless notice of the adverse claim of the cotenant in possession is brought home to the others by actual notice or the possessor's acts are of such unequivocal notoriety that the cotenants out of possession will be presumed to have notice of the possessor's adverse holding. It has been authoritatively decided that the record of a deed by one cotenant purporting to convey the entire property to another cotenant in possession does not establish as a matter of law notice to the cotenant out of possession of the adverse character of the grantee's holding. Ordinarily, the fact that a tenant in possession purports to purchase from another the entire property, of itself, merely raises a presumption that such purchase and possession is for the benefit of all the cotenants. In Long v. McCoy, Tex.Civ.App., 294 S.W. 633, 638, affirmed, Tex.Com.App., 15 S.W. 2d 234, it was held that, where two of three cotenants were in possession of the premises, the recording of a warranty deed to the whole property from one to the other, followed by the giving and recording of mortgages by the grantee and payment of taxes on the entire tract does not, as a matter of law, establish notice to the cotenant out of possession that the grantee was holding adversely, but merely raised an issue of fact as to notice. The circumstances of this case do not require a conclusion that, as a matter of law, Phillip had either actual or constructive notice of Myrtle's adverse claim and that, therefore, she established title under the ten year statute of limitation as a matter of law.

"Since it is said to be the 'general rule that the entry of a cotenant on the common property, even if he takes the rents, cultivates the land, or cuts the wood and timber without accounting or paying for any share of it, will not ordinarily be considered as adverse to his cotenants and an ouster of them' (1 Am.Jur. Adverse Possession, p. 824, § 54), but that, to accomplish an ouster, acts signifying an intention to repudiate the cotenancy and to hold adversely must be shown, as well as knowledge or notice thereof on the part of the tenants out of possession (ibid., p. 825), it is obvious that neither adverse possession without notice, nor notice without actual possession will alone suffice to establish absolute title in a cotenant." 121 A.L.R. 1411.

See Brooks v. Shaw, Tex.Civ.App., 159 S.W.2d 206 (Writ Ref.) and Arrington v. McDaniel, Tex.Com.App., 14 S.W.2d 1009, 1012. We conclude that appellants' contentions that (1) Myrtle has established title by limitation as a matter of law and that (2) the court erred in refusing to instruct a verdict for appellants cannot be sustained.

Myrtle McDougall contends the court erred in not allowing her a recovery against Phillip of one-fourth of the money she paid in discharging a lien against the land and paying taxes and in denying her a recovery of one-fourth of the enhanced value of the land by virtue of improvements made by her. There was no finding of the amount such improvements enhanced the value of the land. The improvements were made on the homestead and it was awarded to her in a partition of the land. In adjusting the equities we assume the court concluded that the value of her use of Phillip's interest was greater than his part of such expenses. See Sparks v. Robertson, Tex.Civ.App., 203 S.W.2d 622 (Writ Ref.) and Roberts v. Roberts, 136 Tex. 255, 150 S.W.2d 236, 136 A.L.R. 1019.

The land bank and Phillip agreed there was no issue of fact to be determined

between them and that their controversy should be decided by the court as a matter of law. The bank now contends that it established conclusively that it was an innocent lienholder for value without notice of Phillip's interest. In making its loan to Myrtle the bank acted with knowledge that she claimed to own one-half of the land by virtue of a deed from Monterey, who claimed to own same as the only child of Eugene. It is apparent that an inquiry made to disinterested parties would have revealed the existence of Phillip. Said contention must be overruled. The bank knew Myrtle was claiming a one-half interest in the land by virtue of a conveyance to her by Monterey as Eugene's heir. In said conveyance she purported to own the interest conveyed by virtue of the fact that she was the only child of Eugene. Myrtle purported to give the bank a lien on one-half of the land by virtue of said conveyance to her by the purported sole heir of Eugene. In Woodburn v. Texas Town Lot & Improvement Co., Tex.Civ.App., 153 S.W. 365, 367, the court correctly said:

"But one who undertakes to purchase from the heirs of a decedent is charged with notice of who all of the heirs are. Ross v. Morrow, 85 Tex. 172, 19 S.W. 1090, 16 L.R.A. 542; Ferguson v. Kentucky, Tex.Civ.App., 25 S.W. 1074. And in Sanborn v. Schuler, 86 Tex. 116, 23 S.W. 641, Judge Stayton said: 'Every purchaser must ascertain who is entitled to take by inheritance any particular property belonging to the estate of a deceased person dying intestate.' "

That court further said:

"Mrs. Sallie Dell's and Mrs. Mary Ballou's interest and ownership in the land was not only as heirs of Isaac Allen and wife, but of John as well, and the purchaser from them, as such heirs, was affected with knowledge of who John Allen's heirs were; and in like manner the defendants herein, claiming under him, were affected with such knowledge. Ross v. Morrow, and Ferguson v. Kentucky, etc., above cited. Being thus undeniably affected with notice of plaintiff's rights as an heir of John, the trial court erred in his conclusion of law; and, since they are thus affected with notice of her rights in this respect, they are therefore necessarily charged with notice of the further rights which she acquired through her mother."

In Ross v. Morrow, 85 Tex. 172, 19 S.W. 1090, 1091, 16 L.R.A. 542, the court said:

"We think that, the defendants having notice of the fact that the property was the community property of Jesse Burnham and his wife, and of the fact of her death, and having bought the land from her heirs, they cannot claim, under the facts of the case, to be purchasers without notice of who her heirs were."

In Ferguson v. Kentucky Land & Live-Stock Co., Tex.Civ.App., 25 S.W. 1074, it was held that the purchaser of a land certificate from heirs of the grantee was charged with notice of the existence of other heirs and put on inquiry as to the existence of heirs of such other heirs.

In Turner v. Cochran, 94 Tex. 480, 61 S.W. 923, 925, it was held that the burden of proof was upon those claiming under a junior mortgage to prove it was an innocent lienholder in order to give it precedence over a prior deed. In Anderson v. Casey-Swasey Co., 103 Tex. 466, 129 S.W. 349, 350 the court said:

"The evidence showed that the title * * * was in Mrs. J. S. Anderson, unless the plaintiff was an innocent purchaser of the property. In order to recover it was necessary that the company should prove that a valuable consideration passed from it at the time it received the deed of trust, and that it had no notice of the unrecorded deed from D. J. Anderson to S. L. Anderson. They failed to make such proof

so far as we are able to find in the record."

The judgment was reversed and judgment was rendered that the asserted innocent lienholder take nothing. See also Towns v. Muhler, Tex.Civ.App., 152 S.W.2d 866, 867 (Writ Ref.); J. M. Radford Grocery Co. v. Citizens' Nat. Bank of Odessa, Tex. Civ.App., 37 S.W.2d 1080, and 29 Tex.Jur. 853–860.

The judgment is affirmed.

### On Motion for Rehearing

It is undisputed that Mrs. Myrtle McDougall paid $3,000 to discharge a vendor's lien against the land and made valuable improvements thereon. See Linz v. Bower, Tex.Civ.App., 86 S.W.2d 63, 66; Hacker v. Hacker, Tex.Civ.App., 4 S.W.2d 218; 86 C.J.S. Tenancy in Common § 66, p. 441. There was no demand for possession by plaintiffs until about the time suit was filed. Since her first husband's death Myrtle McDougall has occupied the land, 200 acres of which is her homestead, and, during part of that time, leased some of it to others and retained the proceeds. See 86 C.J.S. Tenancy in Common § 69, p. 459.

The judgment directs the commissioners of partition to value the timber land, the grass land and the improvements (made by Myrtle McDougall) separately and to award to Myrtle McDougall an amount of land equal in value to three-fourths of the total thereof and one-fourth to Phillip McDougall and Freeman. The homestead 200 acres was awarded to Myrtle only in the event the commissioners found it did not exceed in value three-fourths of that total. Myrtle testified that she spent about $15,000 improving the homestead. Although she paid $3,000 to discharge said vendor's lien, made said improvements and paid the taxes, the judgment allows her no credit therefor. The only money received by her was that which she collected from leasing some of the land. Ordinarily, Myrtle would not be liable for her use of the property until after a demand for pos-session by plaintiffs and a refusal by her. The value of her use of the land is immaterial unless it is considered in an adjustment of the equities between the parties. See Schluter v. Sell, Tex.Civ.App., 194 S.W.2d 125, 132; 11 Tex.Jur. 457; Roberts v. Roberts, 136 Tex. 255, 150 S.W.2d 236, 238, 136 A.L.R. 1019; Sargeant v. Sargeant, 118 Tex. 343, 15 S.W.2d 589; Roberts v. Roberts, 136 Tex. 255, 150 S.W.2d 236, 136 A.L.R. 1019.

■ Although Myrtle paid for the improvements the judgment, in effect, requires her to pay for three-fourths of the value of the improvements again upon partition.

> "A cotenant who had made improvements on a portion of the common property occupied by him as a homestead, and to whom such portion is allotted on partition, will be entitled to receive the same without accounting to his cotenant for the value of such improvements. Lewis v. Sellick, 1887, 69 Tex. 379, 7 S.W. 673; Wentworth v. Wentworth, Tex.Civ.App.1911, 142 S.W. 141; Tucker v. Dodson, Tex. Civ.App.1922, 245 S.W. 728; Gose v. Burnett, Tex.Civ.App.1933, 60 S.W.2d 886; Atkins v. Schmid, Tex.Civ.App. 1939, 129 S.W.2d 412." 140 A.L.R. 1174.

See also 1 A.L.R. 1193 and Sparks v. Robertson, Tex.Civ.App., 203 S.W.2d 622 (Writ Ref.). We have concluded that this constitutes reversible error. That part of the judgment is reversed for an adjustment of the equities upon partition. In all other respects the judgment is affirmed. Gutheridge v. Gutheridge, Tex.Civ.App., 161 S.W. 892, 895; Porter v. Rogers, Tex.Civ.App., 293 S.W. 577, 580 (Writ Ref.); Burrell v. Adams, 104 Tex. 183, 135 S.W. 1156, 1158; 3 Tex.Jur. 1150; 3–B Tex.Jur. 534; Rules of Civil Procedure, rule 434; Scott v. Motler, Tex.Civ.App., 119 S.W.2d 603; Garcia v. Garza, Tex.Civ.App., 161 S.W.2d 297, 301. Myrtle McDougall's motion for rehearing is granted to said extent. Otherwise it is overruled. The bank's motion is

overruled, One-fourth of the costs of appeal are adjudged against Myrtle McDougall and husband, one-fourth against the bank and two-fourths against Phillip McDougall and Freeman.