Steele & Steele, Burnet, L. Hamilton Lowe, Austin, for appellant.

Hammond & Hammond, Burnet, for appellees.

HUGHES, Justice.

This suit, in trespass to try title, was brought by C. G. Malott, trustee, appellant, against M. A. Murchison and wife, Lillie Hill Murchison, to recover a tract of land in Llano County out of the Anna Casner, Abstract No. 1023, John Bryan, Abstract No. 886 and the Peter Jung, No. 47, surveys, described by metes and bounds, and containing 10.5 acres more or less.

Recovery was also sought of an easement and right of way across the Peter Jung Survey No. 47, to provide convenient access to and from the 10.5 acre tract, such easement being more particularly described in the pleadings.

Appellees answered by a plea of not guilty and by specially pleading the 3, 5 and 10 year statutes of limitations. (Arts. 5507, 5509 and 5510, Vernon's Ann.Civ.St. respectively.)

Trial was to a jury. Only the 10 year statute of limitation was submitted to the jury which found favorably to appellee as

**C. G. MALOTT, Appellant,**

v.

**M. A. MURCHISON et ux., Appellees.**

No. 10766.

Court of Civil Appeals of Texas.

Austin.

July 6, 1960.

to the 10.5 acre tract. Ancillary to the issue submitting the 10 year statute was an issue in which the jury found "that the plaintiff, C. G. Malott, Trustee, knew that the defendant, M. A. Murchison was claiming the 10.5 acres in controversy adverse to him, the said Malott."

There was also submitted to the jury this issue:

"Do you find from a preponderance of the evidence that the Defendant, M. A. Murchison, did not know at the time he signed the lease contract in evidence dated July 23, 1948, or at any time while he continued to pay rent thereon, if he did, that the description in such lease contract included the 10½ acres in controversy herein?"

The jury answer "He did not know."

The jury also answered that M. A. Murchison did not have knowledge of such facts "as would have put a person of ordinary and reasonable prudence similarly situated as M. A. Murchison and acting under the same or similar circumstances upon inquiry as to whether or not the description contained in such lease contract included the 10½ acres in controversy."

Judgment on the verdict was rendered decreeing that appellant take nothing by his suit.

The land in suit is a strip of land 100' wide and approximately 4,598.54' in length, and was part of an old railroad right of way running from Beverly Junction on the Southern Pacific to the dam construction work on the Colorado River. Alongside the railroad dump was a county road.

■ The origin, or date of origin, of these easements is not disclosed by the record. It does appear, however, from the testimony of appellee that the railroad was "moved" about 1939, 1940 or 1941, and that the county road was abandoned in 1947.

The road and the railroad were each about 30' wide.

Appellee testified:

"Q. Yes, sir. All right, sir. Now, Mr. Murchison, as you well know, you are the defendant—one of the defendants—in this lawsuit, and you are being sued for the title and and possession of a tract of 10½ acres of land out there close to Buchanan Lake. A. Yes.

"Q. Now, how long have you been familiar with the use, the occupancy, the location and the condition of that tract of land? A. Ever since '39.

"Q. Ever since '39? A. Yes.

*    *    *    *    *    *

"Q. All right, sir. Now, you said a moment ago that you enclosed it, and that you used it, and that you grazed it. When did you fully enclose the 10½ acre tract? A. Well, since '36, always been enclosed.

*    *    *    *    *    *

"Q. I'm asking you a question. What did you think about the right the railroad had to use that land when it had its roadbed there? A. My understanding they didn't have any right after taking up the tracts.

*    *    *    *    *    *

"Q. Well, now then, when did you start claiming that ten acres from the railroad? A. Well, whenever they taken up the railroad right of way. I always had it enclosed since '36. I enclosed it in '36, whenever I bought it.

"Q. But you didn't start claiming it until 1943 or '4? A. No, I claimed it whenever I bought the first tract.

"Q. Well, when you started claiming it, were you claiming it from the railroad? Who did you claim it against? A. I was claiming whenever the road was taken up it reverted back to us. That was the understanding.

"Q. Who did you start claiming it against? A. I didn't start the second time. I claimed it from the start.

"Q. Well, did you think the railroad owned it? A. No, they claimed nobody owned it; it was just an easement on it up there till they got through with the dam.

"Q. And you just started claiming it. All right. Now, that was the railroad you're talking about? A. Yes.

"Q. All right. Now, that railroad is included in this ten acre strip; is it not? A. Yes.

"Q. All right. Now, then, when did you start claiming the public road you're talking about? A. Well, whenever they discontinued—moved the road over to the 'Y', where it is now —the Kingsland road.

"Q. And that was in 1947, wasn't it? A. '47, somewheres around there.

"Q. And that's when you started claiming it. But you didn't claim it up to that time? A. Well, I claimed it all, the roadbed and all. Of course, it was a county road. I couldn't take the county road, or claim a county road."

Although appellee testified that he had used the 10.5 acres since 1936 for grazing purposes, it is clear that his use was not adverse until the railroad and county road were abandoned. This was not earlier than 1939.[1] Appellees' period of 10 years adverse possession must be subsequent to 1939, for the reason that there is no evidence that he had adversely possessed this 10.5 acre tract for ten years prior to 1939.

This suit was filed October 15, 1958.

On July 23, 1948, appellee and C. G. Malott, Trustee, record owners of the title to the 10.5 acre tract executed a written grazing lease covering such tract, among other lands, on a monthly basis and monthly rent of $10.

Appellee paid rent under this lease until about August 1, 1951, when lessor cancelled the lease.

Assuming that appellees' possession became adverse in 1939, it was broken, as a matter of law, by the execution of the grazing lease in 1948, before the completion of ten years adverse possession. Burrell v. Adams, 104 Tex. 183, 135 S.W. 1156, Geries v. Magness, 31 S.W.2d 167, Amarillo Court of Civil Appeals, Sec. 86, Adverse Possession, 2 Tex.Jur.2d.

Appellee did not deny executing the lease but he testified in disparagement of it, the following testimony being an example:

"Q. (Mr. J. A. Steele) Now then, coming down to this lease that you got from Mr. Malott: You do admit that you got a lease from Mr. Malott, Trustee, covering the land that's described in that lease? A. (the witness) Well, the man I leased it to, I only leased this Christian Dreubert, but I didn't lease that land that was out— one side wasn't even fenced, I didn't lease land that wasn't fenced. I just leased the Badger trap over there, he'll tell you that whenever he comes on the stand.

"Q. Now, this (exhibiting) is the lease you accepted from Mr. Malott as Trustee? A. I didn't accept it from Malott, I accepted it from Luther Nobles, and I pointed him, whatever he had in those tracts, 26, that it wasn't in there.

"Q. Yes, but you operated as a tenant of his under this lease, did you not? A. Well, I didn't operate long, because they notified me they wanted it back.

"Q. But you did operate for a while, did you not? A. Yes, on that other over there, but didn't operate on the

[1]. Appellee states in his brief: "Mr. Murchison's testimony clearly shows and establishes title in Appellees under the ten-year statute of limitation beginning in 1939."

road or any of that that wasn't under my fence.

"Q. All right. Now then, the description of this property in this lease reads as follows: '110 acres, more or less, and being all of Tract No. 3 lying south of Highway 29, and that part of Tract No. 26 adjacent thereto (being all of said Tract 26 except the 25.1 acre air field portion thereof, said Tracts 8 and 26 being the same numbered tracts as described in that certain deed from A. J. Wirtz, Receiver, to C. G. Malott, dated January 10, 1935, and recorded in Volume 65 at pages 225–231, of the Deed Records of Llano County, Texas.' Now, that's the description of the land in your lease from Malott. A. Yes, but I called his attention to that No. 26, that I didn't want that, or this over here on the other side, either; I just wanted the C. C. Dreubert over there, which was fenced.

"Q. Did you talk to Mr. Malott about that? A. No, he never even come around or nothing. He sent Nobles down there, paid him ten dollars to come down there and lease it to me.

"Q. Yes, sir. Well, you did lease it, didn't you? A. I didn't lease any of the 26 or anything like that. I just leased the Dreubert on the hillside.

"Q. Are you telling this jury now that even though that land is described in this lease, and you accepted the lease, that you now say that you did not lease that part of it that you are now claiming you own? Is that what you are telling them? A. No. I didn't lease that part of it, because it wasn't necessary. I didn't want it.

\* \* \* \* \* \*

"Q. (M. J. A. Steele) Now, let me ask you, weren't you acquainted at the time with the contents of this lease when you got it? Did you read it over? A. (the witness) Well, I just glanced at it and signed it and gave it back to

Mr. Nobles, told him what I was leasing and what I wasn't going to lease.

"Q. Yes, sir. But you were satisfied, though, when you signed it that what you had done was all right? A. I was satisfied with the Dreubert, I wasn't satisfied with any of the rest of it.

"Q. But you didn't tell Mr. Malott that, did you? A. I never had a chance. He didn't even come down there."

It is our opinion that this testimony does not affect the legal effect of appellees' execution of the lease. We quote from 6 R.C.L., as follows:

"If the contract is plain and unequivocal in its terms he is ordinarily bound thereby. It is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements, and to remove the temptation and possibility of perjury."

To permit appellee after paying rent for three years under a duly executed written lease without protest or committing any act in repudiation of the lease to contend that during such period he was claiming title to the demised lands adversely to the lessor-owner would establish a precedent rewarding the exercise of duplicity and deceit.

We consider the finding of the jury that Mr. Malott knew that appellee was claiming the 10.5 acres adversely to him to

be meaningless under this record. If the possession is adverse, the owner is charged with knowledge of it as a matter of law.

We are of the opinion that each of the other findings of the jury, above indicated, are without any evidence legally supporting them.

Since appellant established a record title to the lands and easement sued for, and since appellee failed to establish title by limitations, his only defense, the Trial Court erred in not granting appellant's motion for instructed verdict and his motion for judgment notwithstanding the verdict.

We, therefore, reverse the judgment of the Trial Court and render judgment for appellant in accordance with his prayer in his original petition, exclusive of damages.

Reversed and rendered.