622

## SPARKS v. ROBERTSON et al.
### No. 9631.

Court of Civil Appeals of Texas. Austin.
May 28, 1947.

Rehearing Denied June 25, 1947.

W. C. Haley, of Waco, for appellant.

Cox, Brown & Daniel and John B. Daniel, Jr., all of Temple, for appellees.

McCLENDON, Chief Justice.

This suit was brought by Turner (Turner Sparks) against Chester (Chester Robertson) to partition residence property, in which each owned a one-half undivided interest. The property was not susceptible of partition in kind, and was therefore sold by a receiver and the proceeds ordered divided between Turner and Chester. The only questions the appeal presents are:

1. Whether Turner's interest is chargeable with $300, being one-half the amount by which the value of the property was enhanced as of the date of the partition judgment, by reason of permanent improvements made thereon during the marriage of Chester and his deceased wife, Elizabeth, and paid for from their community funds, at which time Elizabeth had a homestead estate in the entire property and a one-half interest therein in fee.

2. Whether Turner's portion is entitled to a credit of $76.50, being one-half the amount collected by Chester for rentals of the property subsequently to the death of Elizabeth.

The salient facts, which are undisputed, are these:

The property was the community homestead of Isaac and Elizabeth Sparks, husband and wife. They had no children. Isaac died February 1, 1931, and his half interest, burdened with a small purchase money obligation (not here involved) and with a homestead estate in favor of Elizabeth, was inherited by Turner, Isaac's son by a former marriage. Elizabeth continued to occupy the property as her homestead until her death February 6, 1946. Meantime (July 31, 1931) she married Chester, during which marriage the permanent improvements here involved were made from their community funds. Upon Elizabeth's death her half interest passed to her heirs at law (including a ⅓ life estate to Chester), burdened with a homestead estate therein in Chester, who, after her death, purchased the interests of Elizabeth's other heirs and collected rentals from the property in the amount of $153. The permanent improvements in issue were found to have been voluntarily made and to have enhanced the value of the property in the sum of $600, as of the date of the partition judgment. In the distribution of the proceeds of the sale Turner was denied any allowance on account of rentals collected by Chester after the death of Elizabeth, and his share of the proceeds was charged with $300, one-half the enhancement in value by reason of the stated permanent improvements.

The first question involves the proper application of certain elementary principles, which it will only be necessary to state in general terms. They are:

█ In this State, homestead interest of each spouse or the surviving spouse in the homestead property constitutes an estate therein, and is treated as a life estate, so long as the property retains its homestead character. This is true, whether the fee title to the homestead property belongs to the separate estate of either or both spouses, or to their community estate.

██ An essential element of cotenancy is the present right of possession. Conse-

quently the relationship of cotenancy does not exist among remaindermen, nor between them and the life tenant. And this is true where the life tenant owns additionally an undivided interest in the fee.

A cotenant can not impose any burden upon the estate of his cotenants by voluntarily placing upon the common property improvements of a permanent character. However, in a partition in kind, such cotentant may have set aside to him the portion of the common property upon which such improvements have been placed, if this can be done without detriment to the rights of his cotenants. Likewise, where partition in kind can not be made, such cotenant may be awarded appropriate compensation for such improvements out of the proceeds of the sale of the property.

A life tenant, who owns no greater estate in the property, can not impose any burden upon the estate of remaindermen by voluntarily making permanent improvements on the property.

It may be noted that although as stated the relationship of cotenancy does not exist among the remaindermen, it is held in some jurisdictions under certain circumstances, that principles applied to cotenancy are applied to coremaindermen, in fact they are sometimes designated cotenants in remainder. The following is from 33 Am.Jur., p. 643, § 176: "Remaindermen in their relations with each other concerning their respective interests in the property given to them together are governed by the principles of law governing the respective rights, duties and liabilities of cotenants generally." We do not find that the citations support this unqualified statement of the text. In 98 A.L.R. 859 (1935) is an extensive annotation entitled "Contribution or allowance as between *cotenants in remainder* as affected by fact that one or more of them owns, or did own, the life estate or an interest therein." (Emphasis added.) Upon the specific question of allowance for permanent improvements it will be observed that the annotated cases are in conflict.

It would serve no useful purpose here to discuss these decisions, or the bases upon which their respective conclusions were rested for the reason that we regard the first question foreclosed against the right of Chester to charge Turner's interest with the $300 (½ enhancement by reason of permanent improvement) by the decision in Sargeant v. Sargeant, 118 Tex. 343, 15 S.W.2d 589, 592. In so far as the instant question is concerned the factual situations in the two cases are identical. In the Sargeant case the property was the community business homestead of the surviving husband and his deceased wife, and the partition was made by sale and division of the proceeds. It was sought to charge the proceeds with the cost of permanent improvements made by the survivor, and paid for with his individual funds. The holding upon this issue was "that the survivor, holding the homestead as such after the death of the other spouse, is not entitled to reimbursement for expenditures on account of permanent improvements made on the property during the time he retains possession of the property as a homestead, where such improvements are voluntarily made. Elam & Stewart v. Parkhill, 60 Tex. 581; Clift v. Clift, 72 Tex. 144, 10 S.W. 338." In neither of the cases cited in this quotation (except as noted below) did the life tenant own other than a life estate. In the Clift case the property was the separate estate of the deceased first wife, in which the surviving husband owned only a one-third interest for life. He was therefore a cotenant for life with the other heirs of his deceased wife. Upon this point the Supreme Court, speaking through Judge Gaines, held [72 Tex. 144, 10 S.W. 340]. "It is too plain for argument that a tenant for life of an undivided interest in common with other tenants who are entitled to the remainder can have no higher right in this respect than if he was such (life) tenant of the entire estate." This is unquestionably the holding upon which the Sargeant case citation is based. A portion of the property in the Clift case was the community of the first marriage in which the surviving husband owned a half interest in fee. But as to this interest there was no life estate involved. He was therefore a cotenant with the heirs of his first wife, and the recognized principles of contribution between cotenants were applied. It is not necessary to discuss those principles here, since the

holding in the Sargeant case clearly, in our opinion, is to the effect that the right of a life tenant, who also owns an interest in the fee, to exact from remaindermen contribution for permanent improvements voluntarily made during the life estate is not essentially different from that of a life tenant who owns no greater estate in the property.

We have found no other adjudication by the Supreme Court in which the exact question at bar was presented. An earlier case by the Texarkana court reached the same conclusion as that in the Sargeant case, with reference to certain character of improvements (clearing the land and putting it in cultivation) made by the surviving husband of the first community. The court did hold, however, that the widow of the second marriage, who had no character of interest in the half interest of the heirs of the first wife, was entitled to have set aside to her and her children in a partition in kind (where equitably feasible) the houses and improvements of that character suitable for a home. The opinion in this regard reads: "The appellants were not chargeable with the improvements placed upon the common property by Sims after his second marriage. The ownership of the fee to one half of the land and his life interest in the other half made him a life tenant, in the event he elected to continue to use or occupy it as his homestead. While the improvements made by him may have enhanced the value of the land, they were nevertheless put there with the full knowledge of the character of his tenure, and presumably were intended largely for his own benefit. The testimony shows that the value of these consisted principally of clearing the land. In doing this, Sims was enabled to derive a revenue from the land by raising annual crops thereon, all of which were appropriated to his own use. This use continued approximately 17 years. Under those facts, it would be inequitable to allow Sims' surviving wife the value of that character of improvements. It is the general rule that the owner of the reversion will not be charged with the value of improvements placed upon the land by the life tenant. Elam v. Parkhill, 60 Tex. 581;

Clift v. Clift, 72 Tex. 144, 10 S.W. 338; Calhoun v. Stark, 13 Tex.Civ.App. 60, 35 S.W. 410; Dunavant v. Fields, 68 Ark. 534, 60 S.W. 420; Tiedemann on Real Property, § 68. In so far as it was practicable in making an equitable division of the property, that portion upon which the houses and improvements of that character had been erected should be set aside to the widow and children of the second marriage as their portion of the estate." Richmond v. Sims, Tex.Civ.App., 144 S.W. 1142, 1144 (error dis.).

When that case was decided (1912) the Supreme Court did not have jurisdiction of reversed and remanded cases, and dismissal of the application for writ of error was therefore for want of jurisdiction.

The above holding in the Sargeant case was followed in Williams v. Davis, 133 S.W.2d 275, 279, by the Fort Worth Court of Civil Appeals. It was held, however, that if the surviving husband made the permanent improvements "under the bona fide belief that he was owner of the fee title, he (and his grantees without notice to the contrary) would be entitled to be reimbursed for their value before the equitable interest of plaintiffs could be determined." We are not here concerned with this latter holding. Writ of error was not applied for in this case.

Nor are we here concerned with the rule stated in the Clift case "that, in the adjustment of equities growing out of the conflicting claims which arise under our community laws, we should not be restricted by the ridgid rules which apply ordinarily between tenants in common." The rules in this regard are those derived from the civil law. Chief Justice Hemphill writing in Rice v. Rice, 21 Tex. 58. These rules have no application to property the title to which is in neither spouse nor in the community. As stated in Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620, 627 (Mr. Justice Sharp writing): "The community rights of a spouse growing out of a marriage can only affect the individual interest of the other spouse growing out of a preceding marriage. The rights of children by the preceding marriage can not

626

be affected by the rights of either party arising out of the second marriage. 23 Tex.Jur., § 159, [p. 190]."

 Appellees' contention that Chester was not accountable to Turner for rentals of the property after Elizabeth's death appears to be predicated upon the proposition that Chester had a homestead interest in the entire property after the death of Elizabeth. This is not correct. One can not have a homestead interest in property the title to which is in neither spouse nor in the community. As the survivor of the community of herself and Isaac, Elizabeth, of course, had a homestead interest in the entire property while used as such during her life. Upon her death the homestead interest of Chester extended only to Elizabeth's half interest in the property. Upon her death Chester and Turner became cotenants of the property, and their rights are governed accordingly. The rule is thus stated in 22 Tex. Jur., p. 351, § 242: "Where the survivor is shown to have been a second spouse, his or her right of use and occupancy extends only to the decedent's interest in the property; it is subject to the interest inherited by children of the earlier marriage, and the latter are entitled to demand a partitioning of the property as against such second spouse."

 As to rentals collected by a cotenant "a distinction must be drawn between rentals for his own use and rentals received from others to whom the property has been let. The latter are in the nature of profits received beyond the permitted personal occupancy and use, for which the tenant so receiving must account proportionately to the other cotenant." 11 Tex.Jur. 462, § 39.

This accords with the general rule. 14 Am.Jur. p. 99, § 32.

In so far as the trial court's judgment charged Turner's share of the proceeds with the $300 item and denied him a credit of the $76.50 item, it is reversed and judgment is here rendered in his favor upon both of those items. In all other respects the trial court's judgment is undisturbed. Costs of appeal are taxed against Chester.

Affirmed in part and in part reversed and rendered.