

# NUMBER 13-22-00522-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SAMUEL A. NEWTON A/K/A
SAMUEL E. ASHLEY
AND KAI LYNN O'NEAL,                                          Appellants,

v.

JOE D. NEWTON, II 2003 TRUST,                                 Appellee.

On appeal from the County Court at Law No. 3
of McLennan County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Chief Justice Contreras**

Appellants Samuel A. Newton a/k/a Samuel E. Ashley (Ashley) and Kai Lynn

O'Neal[1] appeal the county court's summary judgment for appellee Joe D. Newton, II 2003 Trust (JDN II Trust) in this forcible detainer action. Appellants contend that genuine issues of material fact existed which precluded summary judgment. We affirm.[2]

## I.    BACKGROUND

On October 6, 2003, Joe D. Newton (Newton Sr.) executed the Joe D. Newton 2003 Trust (JDN Trust), the JDN II Trust, and his last will and testament. Newton Sr. died in December 2003, and his will was probated in January 2004, with Community Bank & Trust, Waco, Texas (CB&T) being appointed independent executor of his estate. Newton Sr. was survived by his wife, Elen Jones Newton, who died in June 2005, and his son from a former marriage, Joe D. Newton II (Newton Jr.).

Newton Sr.'s will provided for different dispositions of his personal effects and the "rest and residue of [his] estate." The provision addressing the latter category provides as follows:

> If my wife survives me, then all the rest and residue of my estate, I give, devise and bequeath to the Trustees as Trustee of the [JDN Trust] . . . .If my wife does not survive me, then all the rest and residue of my estate, I give, devise and bequeath to the Trustees as Trustee of the [JDN II Trust].

On December 1, 2004, CB&T, as independent executor of the estate of Newton Sr., executed a distribution deed granting property located at 5205 Lockwood Dr., Waco, Texas (the Property) to "[CB&T]." On November 10, 2005, the "Estate of [Newton Sr.], deceased, by and through its Independent Executor, [CB&T]" executed a correction distribution deed of the Property which listed as the grantee the "[JDN II Trust], [CB&T],

---

[1] Formerly known as Kai O'Neal Ashley.

[2] This case was transferred from the Tenth Court of Appeals in Waco to this Court pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

Trustee." The correction distribution deed listed an effective date of December 1, 2004.

The terms of the JDN II Trust specified that Newton Sr. would serve as the trustee until his death, whereupon CB&T would assume that role, and listed Newton Jr. as the primary beneficiary during his life. Upon Newton Jr.'s death, Ann Newton Walker, Newton Sr.'s niece, would become the primary beneficiary. The JDN II Trust was to terminate on the last of the following three events: (1) one minute after Newton Sr.'s death; (2) the death of Newton Jr.; or (3) the death of Walker. Upon termination, the JDN II Trust's assets were to pass per stirpes to the descendants of Walker. By its terms, the JDN II Trust granted the trustee the powers to, among other things, "contract to sell, sell and convey, or grant an option to sell, real or personal property at public auction or private sale for cash or for credit or for part cash and part credit, with or without security," and "[t]o retain, sell or invest (including the reinvestment of any sale proceeds) in a residence for the Primary Beneficiary of a trust." In the latter instance, "[t]he Primary Beneficiary shall have no obligation to pay rent for the use of the residence (including any guardian or other person living with and taking care of the Primary Beneficiary)."

Newton Jr. married O'Neal in 1997 and adopted Ashley, an adult, in 2013. Newton Jr. and O'Neal called the Property their principal place of residence from 2005 through Newton Jr.'s death on November 26, 2021. Walker predeceased Newton Jr. so, operating under the terms of the JDN II Trust, CB&T advised appellants in writing in December 2021 that they must leave the Property by March 22, 2022, so that it may pass per stirpes to Walker's descendants. Appellants continued to occupy the Property.

On April 22, 2022, appellee filed a forcible detainer suit in the justice court against

appellants.[3] On May 12, 2022, the justice court determined that appellee was entitled to possession of the Property and signed a judgment in eviction. Ten days later, appellants appealed the justice court's summary judgment to the county court in McLennan County.

In a trial de novo in the county court, appellee filed a petition for eviction and attached as exhibits its notice to appellants to vacate the Property, the JDN II Trust document, Newton Sr.'s will, and appellants' responses to its requests for admission. Request for admission number six asked appellants to admit or deny whether the "Property is owned by [CB&T] as Trustee of the [JDN II Trust]." Ashley responded, "Deny: No, they maintain the [P]roperty as administrators of the trust for the benefit of my father, [Newton Jr.] and his family." O'Neal responded, "No[.] The Property is not owned by [CB&T]. The [P]roperty is held in trust as a 'unique asset.'"[4] Request for admission number seven asked appellants to admit or deny that Newton Jr. "did not own the Property." Ashley responded, "The [P]roperty was held as a unique asset to be administered by the [JDN II Trust]." O'Neal replied, "[Newton Jr.] inherited the [P]roperty according to his father's will by the laws of decent [sic] and distribution." Requests for admission numbers ten and eleven asked appellants to admit or deny that they were advised to vacate the Property. O'Neal replied that it was "suggested" that they vacate

---

[3] Appellants do not challenge appellee's standing to file a forcible detainer action. We note that, "[i]f an event of [trust] termination occurs, the trustee may continue to exercise the powers of the trustee for the reasonable period of time required to wind up the affairs of the trust and to make distribution of its assets to the appropriate beneficiaries." TEX. PROP. CODE ANN. § 112.052.

[4] A document entitled "unique asset retention letter" dated April 27, 2021, appears in the record. In it, CB&T informs Newton Jr. that the JDN II Trust "holds a non-publicly traded asset." It relates, "It is our understanding that you desire for us to retain this asset in your trust at present, because of the relationship and special value that this unique asset holds for you, regardless of the lack of a public market or the ability to produce income." CB&T requested that Newton Jr. sign the letter to confirm such agreement and noted that in the absence of a response within thirty days, it would assume Newton Jr.'s agreement. The document is unsigned.

the property. Ashley responded, "Yes." Request for admission number sixteen asked appellants to admit or deny that they do not own the Property. Both O'Neal and Ashley admitted they do not own the Property. Finally, request for admission number eighteen asked appellants to admit or deny that they "currently occupy the Property." O'Neal responded, "The [P]roperty is my permanent residence." And Ashley responded, "Yes."

On August 11, 2022, appellee moved for summary judgment.[5] On September 28, 2022, appellants responded, arguing that "a genuine issue of material fact regarding the element of ownership of the Property" existed, as did an issue of material fact about whether O'Neal maintained a homestead right in the Property. Appellants incorporated the exhibits in appellee's summary judgment motion into their response, including Newton Sr.'s will. As to ownership, appellants asserted that the executor of Newton Sr.'s will was "authorized to distribute the Property to the [JDN II Trust] **only if** Elen Jones Newton failed to survive [Newton Sr.]" Because Elen Jones Newton survived Newton Sr., appellants argued that the executor "should have distributed the Property to the [JDN Trust] referenced in the [w]ill, not the [JDN II Trust]." They continued, "[Appellee's] motion fails to explain why it did not follow the terms of the [w]ill as it was required to do as the executor and fails to include any summary judgment evidence related to the [JDN Trust]." Indeed, neither party filed the JDN Trust document.

On October 5, 2022, the county court heard arguments on appellee's summary

---

[5] The motion for summary judgment states that it was brought on traditional and no-evidence grounds. However, the only affirmative claim brought in this suit is appellee's forcible detainer claim, for which appellee bore the burden of proof. Accordingly, no-evidence summary judgment was not available to appellee. *See* TEX. R. CIV. P. 166a(i). ("After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.").

judgment motion. The county court granted the summary judgment motion the next day, and this appeal followed.

## II.  STANDARD OF REVIEW & APPLICABLE LAW

We review summary judgments de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 646 (Tex. 2020).

To be entitled to traditional summary judgment, a movant must establish there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P.166a(c); *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). The nonmovant can meet its burden if it presents more than a scintilla of evidence, i.e., the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). "Evidence is less than a scintilla . . . if it is 'so weak as to do no more than create a mere surmise or suspicion that the fact exists.'" *Subsea 7 Port Isabel, LLC v. Port Isabel Logistical Offshore Terminal, Inc.*, 593 S.W.3d 859, 873 (Tex. App.—Corpus Christi–Edinburg 2019, pet. denied) (quoting *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010)). "[W]e must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *see Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015).

6

A forcible detainer action is an eviction procedure to determine the right to immediate possession of real property where there is no unlawful entry. *Alanis v. Wells Fargo Bank Nat'l Ass'n*, 616 S.W.3d 1, 6 (Tex. App.—San Antonio 2020, pet. denied). Its purpose "is to provide a party with an immediate legal remedy to obtain possession." *Falcon v. Ensignia*, 976 S.W.2d 336, 338 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.). Indeed, "[t]he sole focus of a forcible-detainer action is the right to immediate possession of real property." *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 478 (Tex. 2017); *see Terra XXI, Ltd. v. AG Acceptance Corp.*, 280 S.W.3d 414, 417 (Tex. App.—Amarillo 2008, pet. denied) ("In a forcible detainer proceeding, the merits of the title shall not be adjudicated." (cleaned up)).

"Jurisdiction to hear forcible detainer actions is vested in justice courts, and on appeal, to county courts for a trial de novo." *Alanis*, 616 S.W.3d at 6 (cleaned up); *see Rice v. Pinney*, 51 S.W.3d 705, 713 (Tex. App.—Dallas 2001, no pet.) ("A justice court and, on trial de novo, a county court have been given exclusive jurisdiction to decide the issue of immediate possession."). "Justice courts may adjudicate possession even where issues related to the title of real property are tangentially or collaterally related to possession." *Falcon*, 976 S.W.2d at 338. However, "[d]istrict courts have sole jurisdiction to adjudicate title to real property"; thus, "[i]f the question of title is so integrally linked to the issue of possession that possession may not be determined without first determining title, justice and county courts are without jurisdiction to make any determinations regarding title." *Id.*; *see* TEX. R. CIV. P. 510.3 ("The [justice] court must adjudicate the right to actual possession and not title."). "Specific evidence of [a] title dispute is required to raise an issue of a justice court's jurisdiction." *Falcon*, 976 S.W.2d at 338.

7

"Because a forcible detainer action is not exclusive, but cumulative, of any other remedy that a party may have in the courts of this state, the displaced party is entitled to bring a separate suit in the district court to determine the question of title." *Rice*, 51 S.W.3d at 709. "Forcible detainer actions in justice courts may be brought and prosecuted concurrently with suits to try title in district court." *Id.*

In a forcible detainer suit, the plaintiff must show: (1) it is the owner of the relevant property; (2) the defendant is a tenant at sufferance, a tenant at will, or a tenant or subtenant willfully holding over after the tenant's right of possession has terminated; (3) it made a written demand for possession; (4) it notified the defendant to vacate the premises; and (5) the defendant refused to vacate. *Alanis*, 616 S.W.3d at 6 (first citing TEX. PROP. CODE ANN. §§ 24.002(b), 24.005(f); and then citing *Bradberry*, 526 S.W.3d at 478).

## II. THERE IS NO ISSUE OF MATERIAL FACT AS TO THE PROPERTY'S OWNERSHIP

By their first issue, appellants contend that a genuine issue of material fact exists as to the Property's ownership so as to preclude summary judgment. Citing a footnote in the Dallas court of appeals' opinion in *Rice v. Pinney*, they argue that there was no landlord-tenant relationship between the parties here, and thus, an adjudication of title was required.[6] *See* 51 S.W.3d at 712 n.4. Appellee asserts that appellants' citation to *Rice* is misleading, and that the summary judgment evidence "gave rise to a tenant-at-sufferance relationship" between the parties and showed its entitlement to immediate possession of the Property.

---

[6] While they argue that summary judgment was improper because of an alleged fact issue of ownership, appellants do not contend that the justice court lacked jurisdiction to hear the forcible detainer suit.

In *Rice*, the issue of whether "the existence of a landlord-tenant relationship is [a] jurisdictional" requisite for a forcible detainer action in the justice courts was not germane to the Dallas court's analysis. *Id.* It noted in a footnote, "however, that one indication that a justice court, and on appeal a county court, may be required to adjudicate title to real estate in a forcible detainer case—and, thus, exceed its jurisdiction—is when a landlord-tenant relationship is lacking." *Id.* Citing no other authority but the *Rice* footnote, appellants assert that "if there is no instrument expressly creating a landlord-tenant relationship, adjudication of title or ownership is needed." We agree with appellee that *Rice* does not support appellants' assertion.

The existence of a security instrument or some other contract is not "required for a party to be subject to a forcible-detainer action." *Jimenez v. McGeary*, 542 S.W.3d 810, 814 (Tex. App.—Fort Worth 2018, pet. denied); *see Fandey v. Lee*, 880 S.W.2d 164, 169 (Tex. App.—El Paso 1994, writ denied) (op. on reh'g) ("In the absence of a legally enforceable agreement, such as a lease or rental agreement or a contract to sell, an occupier of premises is at best a tenant at sufferance and at worst a trespasser."); *see also Brooks v. Wells Fargo Bank, N.A.*, No. 05-16-00616-CV, 2017 WL 3887296, at *9 (Tex. App.—Dallas Sept. 6, 2017, no pet.) (mem. op.) ("A contract is not required for a party to be subject to a forcible-detainer action."). A tenancy at sufferance "is created when one wrongfully continues in 'naked possession of property' after his right to possession has ended and does not assert a claim to superior title." *Jimenez*, 542 S.W.3d at 814 (quoting *Williams v. Deutsche Bank Nat'l Tr. Co.*, No. 05-11-00434-CV, 2012 WL 1899156, at *2 (Tex. App.—Dallas Apr. 27, 2012, no pet.) (mem. op)); *see ICM Mortg. Corp. v. Jacob*, 902 S.W.2d 527, 530 (Tex. App.—El Paso 1994, writ denied) ("A tenant

9

at sufferance is merely an occupant in naked possession of property."); *Goggins v. Leo*, 849 S.W.2d 373, 377 (Tex. App.—Houston [14th Dist.] 1993, no writ) ("A tenant at sufferance does not have privity with the landlord but is merely an occupant in naked possession after his right to possession has ceased.").

The record shows that appellants were tenants at sufferance. *See Jimenez*, 542 S.W.3d at 814. Under the terms of the JDN II Trust, Newton Jr. was the primary beneficiary until his death, at which point the trust terminated, and its assets were to pass to Walker's descendants. Both O'Neal and Ashley admitted that they did not own the Property, that the Property was held as a "unique asset" in the JDN II Trust, and that they maintained possession of the Property after two requests for them to vacate. *See* TEX. R. CIV. P. 198.3 ("A matter admitted under this rule is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission."). Appellee "would [thus] be entitled to possession [of the Property] . . . by merely showing sufficient evidence of ownership to demonstrate a superior right to immediate possession." *See Jimenez*, 542 S.W.3d at 814 (cleaned up); *Goggins*, 849 S.W.2d at 377.

On top of appellants' admissions that they do not own the Property and that the Property was held as a "unique asset" by the JDN II Trust, appellee has provided evidence showing its superior right to immediate possession. *See Jimenez*, 542 S.W.3d at 814. First, the correction distribution deed lists Newton Sr.'s estate, by and through CB&T, as the grantor of the Property, and lists appellee as the grantee. And second, the JDN II Trust document lists CB&T as trustee and provides that upon the trust's termination, the trustee must distribute the trust's assets to Walker's descendants. *See id.* at 815 ("The

10

special warranty deed in evidence established that [appellee] was one of the property's owners. The [appellants]' continued possession of the property following [appellee]'s notices to vacate created a tenancy at sufferance. Evidence of the [appellants]' tenancy at sufferance, along with the notices to vacate, established [appellee]'s right to immediate possession of the property." (cleaned up)); *Rice*, 51 S.W.3d at 709 ("To prevail in a forcible detainer action, a plaintiff is not required to prove title, but is only required to show sufficient evidence of ownership to demonstrate a superior right to immediate possession.").

Nevertheless, arguing that the Property was improperly distributed to the JDN II Trust instead of the JDN Trust, appellants assert that appellee lacks "a valid chain of title to the Property" and that the issue of ownership—and thus the right to immediate possession—hinges on the resolution of a material issue of fact. Appellee responds by directing this Court to a memorandum opinion from the Fort Worth Court of Appeals, which we find instructive. *See Gaber v. U.S. Bank Nat'l Ass'n*, No. 02-20-00376-CV, 2021 WL 5367851, at *1 (Tex. App.—Fort Worth Nov. 18, 2021, pet. denied) (mem. op.).

In *Gaber,* the appellant defaulted on his home-equity loan, and U.S. Bank obtained a foreclosure order for the relevant property. *Id.* "[T]he Bank conducted [a] nonjudicial foreclosure sale and acquired the [p]roperty through a substitute trustee's deed." *Id.* The Bank demanded possession of the property and sent a notice to vacate, but the appellant refused to vacate. *Id.* The Bank then filed a forcible detainer action in the justice court, which ruled in the Bank's favor. *Id.* The appellant appealed to the county court which granted summary judgment for the Bank. *Id.* The appellant appealed the county court's summary judgment, presenting five issues to the Fort Worth court for review, the first

11

three of which concerned the validity of the bank's deed. *Id.*

The Fort Worth court affirmed the county court's summary judgment. *Id.* at 2. It stated that "[a] forcible detainer plaintiff is not required to prove title; it is only required to offer sufficient evidence of ownership to demonstrate a superior right to immediate possession of the property." *Id.* Thus, it continued, "any questions about defects in the foreclosure process or whether the sale of property under a deed of trust is invalid may not be determined in a forcible detainer action and must be brought in a separate suit, which [appellant] did not do." *Id.* (cleaned up). It concluded that, apart from his evidentiary challenges to the deed, "[appellant] d[id] not appear to argue that the evidence was insufficient to support the Bank's superior right to possession; all of [appellant]'s arguments regarding the superior right to possession [we]re premised on the [d]eed's alleged invalidity." *Id.* at 3. The court overruled the appellant's challenges and affirmed the county court's judgment. *Id.* at 6.

Here, too, by their first issue, appellants attempt to preclude summary judgment on the issue of possession by asserting that the instrument granting appellee its ownership interest in the Property was invalid. While they may or may not be able to challenge the validity of the deed and of appellee's chain of title to the Property in a separate suit, the issue does not preclude summary judgment in this forcible detainer action because appellee's summary judgment evidence proved appellee's superior right to immediate possession of the Property. *See Subsea 7 Port Isabel, LLC*, 593 S.W.3d at 873; *Jimenez*, 542 S.W.3d at 815; *Rice*, 51 S.W.3d at 709; *Falcon*, 976 S.W.2d at 338; *see also Gaber*, 2021 WL 5367851, at *6.

We overrule appellants' first issue.

12

### III. THERE IS NO ISSUE OF MATERIAL FACT AS TO THE PROPERTY'S HOMESTEAD CHARACTER

By their second issue, appellants contend that "[a] genuine issue of material fact regarding [the] homestead character of the Property exists that precludes summary judgment." Specifically, they assert that "[a]s the [p]rimary [b]eneficiary[ of the JDN II Trust], [Newton Jr.] was the equitable owner of the Property" and "had a present possessory interest in the Property." Given those putative ownership and possessory interests, and having mainly resided at the Property for over fifteen years, appellants assert that the Property was Newton Jr.'s and O'Neal's homestead. Thus, appellants contend, O'Neal may "occupy the Property during her life or for so long as she may elect to use or occupy the Property as a homestead, pursuant to Article XVI, [§] 52 of the Texas [c]onstitution," which provides:

> On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the surviv[o]r may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same.

TEX. CONST. art. XVI, § 52.

### A. Applicable Law

"The party claiming the homestead exemption has the burden of establishing the homestead character of the property." *Dominguez v. Castaneda*, 163 S.W.3d 318, 330 (Tex. App.—El Paso 2005, pet. denied). Merely residing for any length of time in a house on the property does not convert the property into a homestead, and "the word 'home' is not necessarily synonymous with 'homestead.'" *Id.* at 331. What type of interest one must

actually hold in the property to support a homestead claim seems to be an unsettled question. Some courts have stated that ownership plus a possessory interest are required to support a homestead right; others conclude that a possessory interest alone will suffice. *Compare Greene v. White*, 153 S.W.2d 575, 586 (Tex. 1941) (concluding that appellants "could have no homestead right or interest in land to which they had no title"), *and Dominguez*, 163 S.W.3d at 331 ("Possession and use of land by one who owns it and who resides upon it makes it the homestead in law and in fact."), *and Sparks v. Robertson*, 203 S.W.2d 622, 626 (Tex. App.—Austin 1947, writ ref'd) ("One can[]not have a homestead interest in property the title to which is in neither spouse nor in the community."), *with Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 636 (Tex. 1987) ("A homestead may attach to any possessory interest, subject to the inherent characteristics and limitations of the right, title[,] or interest in the property. The homestead, however, will not operate to circumvent an inherent characteristic of the property acquired." (internal citation omitted)), *and Gann v. Montgomery*, 210 S.W.2d 255, 258 (Tex. App.—Fort Worth 1948, writ ref'd n.r.e.) ("The claim of homestead exemption does not depend on unqualified fee ownership of the land involved."), *and Capitol Aggregates, Inc. v. Walker*, 448 S.W.2d 830, 837 (Tex. App.—Austin 1969, writ ref'd n.r.e.) ("[A]ny possessory interest in a lot or lots, the fee[ ]simple title not being required to support it, coupled with the requisite occupancy by the husband and his family, is sufficient to support a homestead claim."). Common to each approach, however, is the requirement of a possessory interest in the property to support the homestead claim.

In the trust context, "[t]he trustee of a trust holds bare legal title and the right to possession of trust assets, while the beneficiary is considered the real owner of the

14

property, holding equitable or beneficial title." *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 322 (Tex. App.—Dallas 1997, writ denied); *see Bradley v. Shaffer*, 535 S.W.3d 242, 248 (Tex. App.—Eastland 2017, no pet.) ("The trustee is merely the depository of the bare legal title. The trustee is vested with legal title and right of possession of the trust property but holds it for the benefit of the beneficiaries, who are vested with equitable title to the trust property." (internal citation omitted)); *Hallmark v. Port/Cooper-T. Smith Stevedoring Co.*, 907 S.W.2d 586, 589 (Tex. App.—Corpus Christi–Edinburg 1995, no writ) ("The trustee is vested with legal title and right of possession of the trust property but holds it for the benefit of the beneficiaries, who are vested with equitable title to the trust property."); *see also Kuhns v. Carnes*, No. 03-97-00721-CV, 1999 WL 699809, at *8 (Tex. App.—Austin Sept. 10, 1999, pet. denied) (mem. op., not designated for publication) ("The law is well settled that in a valid trust legal title to the trust res is vested in the trustee and the beneficiary has the equitable title only, without possession or right of possession.").

## B.     Analysis

Appellee argues that Newton Jr. lacked any ownership interest in the Property to support appellants' homestead claim. Appellants contend that as the trust beneficiary, Newton Jr. was the "equitable owner" of the Property, and that this type of interest is sufficient to support such a claim. We need not address what, if any, ownership interest Newton Jr. held in the Property because, no matter the interest, he lacked the necessary right of possession to support the homestead claim. *See Harris*, 736 S.W.2d at 636; *Burns*, 948 S.W.2d at 322; *Hallmark*, 907 S.W.2d at 589–90; *see also Kuhns*, 1999 WL 699809, at *8. As trustee, CB&T was legal owner of the trust property with the right of

15

possession and held the Property for the benefit of Newton Jr. *See Hallmark*, 907 S.W.2d at 589–90. Without the right of possession, Newton Jr.—and appellants by extension—cannot support a homestead claim. *See id.* Appellants cite *Laster v. First Huntsville Properties Co.* for the proposition that homestead protections arise in those with a present possessory interest in property. *See* 826 S.W.2d 125, 130 (Tex. 1991). True. But *Laster* does not arise in the trust context, *see id.* at 127 (concluding that "one ex-spouse who, pursuant to a consent decree of divorce, holds a future interest in property subject to the homestead right of the other ex-spouse, can mortgage that interest"), and appellants cite no authority in which an irrevocable trust beneficiary was deemed to hold a possessory interest in any trust corpus so as to support a homestead right.

Citing two cases, appellants also broadly assert that "an equitable interest will support a homestead claim." However, again, neither case arises in the context of property held in a trust. *See Rose v. Carney's Lumber Co.*, 565 S.W.2d 571, 573 (Tex. App.—Tyler 1978, no writ) ("Equitable title acquired under a contract of purchase is sufficient as a basis for a claim of homestead.")[7]; *White v. Edzards*, 399 S.W.2d 935, 938 (Tex. App.—Texarkana 1966, writ ref'd n.r.e.) (concluding, without mention of equitable interests, that a husband maintained a homestead in a farm he occupied following his divorce which precluded judgment creditors from levying on the farm). While some equitable interests may support a homestead claim, neither Newton Jr. nor appellants

---

[7] Further distinguishing *Rose* from the instant case is the fact that, in the contract of purchase or conveyance context, "[e]quitable title is defined as 'a right, enforceable in equity, to have the legal title to real estate transferred to the owner of the right upon the performance of specific conditions . . . .'" *Glenn v. Lucas*, 376 S.W.3d 268, 276 (Tex. App.—Texarkana 2012, no pet.) (quoting *City of Houston v. Guthrie*, 332 S.W.3d 578, 588 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). Here, unlike with a purchase contract, Newton Jr. was a beneficiary under the JDN II Trust and had no ability under the trust's terms to acquire legal title.

maintain any such interest under the JDN II Trust.

In a final contention, appellants argue as follows:

[A] deceased spouse may not by testamentary provision deprive the survivor of the use and occupancy of the homestead. *Lindsley et al. v. Lindsley*, 139 Tex. 512, 518, 163 S.W.2d 633, 636-37 (Tex. [Comm'n Op.] 1942). In interpreting a trust instrument, identical rules apply to the construction of trusts and wills. *In re Ellison Grandchildren Trust*, 261 S.W.3d 111, 117 (Tex. App.—San Antonio 2008, pet. denied); *San Antonio Area Found*[.] *v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). Therefore, in the same way that Texas law protects a surviving spouse's homestead right when construing testamentary provisions in a Will, Texas law protects (or should protect) a surviving spouse's homestead right when construing provisions in an irrevocable trust since both documents explicitly provide for plans of estate conservation and distribution after death.

*Lindsley* is distinguishable here because, among other things, as we have already concluded, Newton Jr. had no homestead right in the Property to begin with. Thus, he could not have deprived appellants of a homestead right.

At bottom, we disagree with appellants that there is evidence in the record that either Newton Jr. or O'Neal maintained a homestead right in the Property. However, even if they did, "homestead rights . . . attach to the land as acquired, subject to any burden, legal or equitable, upon the land at the time of its occupancy as a homestead." *Reid v. Howard*, 9 S.W. 109, 110 (Tex. 1888); *see Harris*, 736 S.W.2d at 636 ("A homestead may attach to any possessory interest, subject to the inherent characteristics and limitations of the right, title or interest in the property."); *Sayers v. Pyland*, 161 S.W.2d 769, 773 (Tex. 1942) ("It is also a well-recognized principle of law that one's homestead right in property can never rise any higher than the right, title, or interest that he owns in the property attempted to be impressed with a homestead right."); *cf. Grant v. Clouser*, 287 S.W.3d 914, 920 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("The general rule is that homestead rights attaching to property interests held by a cotenant are subordinate to

another cotenant's right to partition."). The summary judgment evidence shows that the Property was owned by the JDN II Trust before Newton Jr. and appellants moved into the Property and ostensibly claimed it as their homestead. To the extent that Newton Jr. and appellants had any homestead interest in the Property, it was subordinate to the JDN II Trust's interest as owner of the Property. *See Reid*, 9 S.W. at 110; *Sayers*, 161 S.W.2d at 773; *Grant*, 287 S.W.3d at 920. Thus, when Newton Jr. died, and CB&T as trustee of the JDN II Trust attempted to distribute the Property to Walker's descendants, appellants were required to vacate the Property.

Concluding that no issue of material fact exists as to the Property's homestead character, we overrule appellants' second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
6th day of July, 2023.