

# NUMBER 13-22-00033-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHRISTOPHER MURRAY,                                                            Appellant,

v.

VERONICA ROBINSON,                                                            Appellee.

## On appeal from the 98th District Court
## of Travis County, Texas.

# MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña**
**Memorandum Opinion by Justice Peña**

Appellant Christopher Murray appeals a judgment following a bench trial in favor

of appellee Veronica Robinson on Murray's claims for declaratory judgment and equitable

reimbursement regarding a jointly owned property. The trial court declared that Robinson

was not responsible for the property taxes, mortgage payments, or maintenance, repair,

and improvement expenses incurred by Murray. However, it declared that Robinson was responsible for one half of the insurance premiums paid for the structures on the property. In three issues, which we reframe and construe as two issues, Murray argues that the trial court erred in: (1) not granting judgment in Murray's favor; and (2) issuing declarations that were not supported by the pleadings. We affirm.[1]

## I. BACKGROUND

Murray and his wife, Florentina Murray, owned approximately seventy-eight acres of property in Travis County which constituted their homestead (the property). Florentina died intestate in 1997. At the time of Florentina's passing, the property was unencumbered by any liens. In 1998, Robinson, Florentina's only child from a prior marriage, filed an affidavit of heirship asserting an interest in the property pursuant to Texas's laws on intestate succession.[2] *See* TEX. EST. CODE ANN. §§ 102.003, 201.003(c).

After Florentina's death, Murray continued to reside on the property and claim it as his homestead, while Robinson resided elsewhere. In 2019, Murray sued Robinson, asserting causes of action for contribution and reimbursement, foreclosure of equitable lien, and declaratory judgment. Murray claimed that Robinson was responsible as a joint owner for fifty percent of the sums Murray paid for taxes, insurance, and repairs for the property. Murray also claimed Robinson was responsible for fifty percent of the principal and interest paid for a mortgage taken out on the property after Florentina's death. Finally, Murray claimed Robinson was responsible for fifty percent of the cost of improvements to

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another if there is "good cause" for the transfer).

[2] The parties agree that Robinson inherited a fifty percent interest in the property due to Florentina's community interest in the property passing through intestate succession.

the property and reimbursement for the resulting increase in value to the property.

Robinson filed an answer asserting a general denial, and the case proceeded to a bench trial. At trial, Murray testified that there was no probate administration for Florentina's estate. He claimed that Florentina owed approximately $300,000 in debts at the time of her death, although the property itself was not encumbered by those debts. Following Florentina's death, Murray took out two loans secured by a lien on the property—$238,477.50 in 1998 and $410,000 in 2001.[3] Murray testified that the proceeds of the 1998 loan went toward paying the debts of Florentina's estate. He testified that $300,000 of the proceeds of the 2001 loan were used for the same purpose. Murray stated that he used the remaining $110,000 for private investment. Murray did not produce any documentary evidence showing how the money for either loan was spent. Murray agreed that Robinson did not receive any proceeds from these loans. Robinson did not sign the promissory note on either loan, and she was not personally liable on the loans.

According to Murray, he sought reimbursement from Robinson for the principal and interest paid toward $300,000 of the 2001 loan, which constituted approximately $611,000 at the time of trial. Murray also spent $82,121.27 on homeowner's insurance through trial, although he claimed Robinson was only responsible for paying her share of sixty-seven percent, or $55,021.25, because that portion went toward insuring the structures on the property. Murray testified that he paid a total of $335,997 in property

---

[3] The loan documents reflect the entire seventy-eight acres as homestead. However, Murray presented evidence that he only claimed twenty acres of the property as homestead. We defer to the trial court's resolution of this fact issue. *See Howeth Invs., Inc. v. City of Hedwig Village*, 259 S.W.3d 877, 894 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (explaining that "it is the province of the trial court in a bench trial to resolve conflicting evidence," and "we must assume that it resolved all conflicts in accordance with its fact findings").

taxes. Murray also testified that he spent $135,459.95 to improve the property, which he claimed increased the value of the property by $23,028.14.

The trial court signed a judgment, with the following declarations:

1.    The [property] was the marital homestead of [Murray] and Florentina[], and [Murray] continues to occupy the [p]roperty under his homestead rights as a surviving spouse;

2.    [Robinson] is not responsible for any of the ad valorem property taxes on the [p]roperty;

3.    [Robinson] is not responsible for any payments, whether a principal payment or an interest payment on the property;

4.    [Robinson] is not responsible for any of the maintenance, repairs, or improvements made on or to the [p]roperty by [Murray]; and

5.    [Robinson] is responsible for one-half of the insurance premiums on the structures and shall reimburse [Murray] for the paid insurance premiums in the amount of $27,510.62.

The trial court signed the following findings of fact and conclusions of law:

## I.    FINDINGS OF FACT

1.    The [property] was the marital homestead of [Murray] and Florentina[4];

2.    Florentina[] passed away in 1997, and her ½ community property interest in the [p]roperty passed by intestate succession to []Robinson;

3.    [Murray] has exclusively occupied and continues to exclusively occupy the [p]roperty under his homestead rights as the surviving spouse of Florentina[];

4.    There were no liens on the [p]roperty at the death of Florentina[] in 1997;

5.    [Robinson] did not execute the Promissory Note, dated April 3, 1998,

---

[4] As noted above, Murray claimed to present evidence that the homestead constituted only twenty acres of the property. However, Murray does not challenge this finding on appeal. *See Pearl Res. LLC v. Charger Svcs., LLC*, 622 S.W.3d 106, 115 (Tex. App.—El Paso 2020, pet. denied) ("[I]f the trial court's findings of fact are not challenged by a point of error on appeal, the appellate court is bound by them.").

from [Murray] to Banc One Financial Services ("1998 Note");

6.  [Robinson] did not execute the Texas Home Equity Fixed/Adjustable Rate Note, dated July 23, 2001, from [Murray] to Long Beach Mortgage Company ("2001 Note");

7.  No proceeds from either the 1998 Note or the 2001 Note were used to purchase the [p]roperty or refinance any debt used to purchase the [p]roperty;

8.  [Robinson] did not receive any proceeds from either the 1998 Note or the 2001 Note; and

9.  The total insurance premiums paid on the structures on the [p]roperty since Florentina['s] death are $55,021.24.

## II.    CONCLUSIONS OF LAW

1.  Since [Murray] is occupying the [p]roperty under his rights as the surviving spouse, [Murray] is responsible for all of the ad valorem taxes on the [p]roperty;

2.  Since [Murray] is occupying the [p]roperty under his rights as the surviving spouse, [Murray] is responsible for all of the maintenance, repairs, and/or improvements made to the [p]roperty;

3.  Since no proceeds of the 1998 Note or the 2001 Note were used to purchase the [p]roperty or refinance any debt used to purchase the [p]roperty, and since [Robinson] did not receive any proceeds from the 1998 Note or the 2001 Note, [Robinson] is not responsible for any principal or interest payments on either note.

4.  [Robinson] is responsible for one half of the hazard insurance premiums paid for the hazard insurance on the structures of the policy which equals $27,510.62.

Murray filed a motion to correct, modify, and reform the judgment, which was overruled by operation of law. This appeal followed.

## II.    SURVIVING SPOUSE HOMESTEAD RIGHTS

In his first issue, Murray argues that the trial court erred in declaring that Robinson was not obligated to reimburse him for any portion of the property taxes, loan payments,

5

maintenance, repairs, or improvements pertaining to the property.

## A. Standard of Review & Applicable Law

We construe Murray's issue as challenging the trial court's conclusions of law. "We apply a de novo standard to review a trial court's conclusions of law in a bench trial and will uphold them if the judgment can be sustained on any legal theory supported by the evidence." *Wood v. Wiggins*, 650 S.W.3d 533, 544 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (first citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); and then citing *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). "If the reviewing court determines a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal." *Bowman v. Stephens*, 569 S.W.3d 210, 224 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)).

"The homestead of a decedent who dies leaving a surviving spouse descends and vests on the decedent's death in the same manner as other real property of the decedent and is governed by the same laws of descent and distribution." TEX. EST. CODE ANN. § 102.003. "If the deceased spouse is survived by a child or other descendant who is not also a child or other descendant of the surviving spouse, the deceased spouse's undivided one-half interest in the community estate passes to the deceased spouse's children or other descendants." *Id.* § 201.003(c). Under the Texas Constitution, "[a] surviving spouse has the right to occupy the homestead for the remainder of his life." *Henry v. Brooks*, 651 S.W.3d 657, 663 (Tex. App.—Tyler 2022, no pet.) (citing TEX. CONST. art. XVI, § 52). "So long as the surviving spouse elects to use or occupy the

6

homestead, the homestead is not subject to partition among the heirs of the deceased." *Id.* (citing TEX. CONST. art. XVI, § 52).

The surviving spouse's "estate is analogous to a life tenancy, with the holder of the homestead right possessing the rights similar to those of a life tenant for so long as the property retains its homestead character." *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991) (first citing *Fiew v. Qualtrough*, 624 S.W.2d 335, 337 (Tex. App.—Corpus Christi–Edinburg 1981, writ ref'd n.r.e.); and then citing *Sparks v. Robertson*, 203 S.W.2d 622, 623 (Tex. App.—Austin 1947, writ ref'd)). The homestead right therefore "reduc[es]" underlying ownership rights "in a homestead property to something akin to remainder interests." *Id.* In this situation, a co-tenancy does not exist among the life tenant and the inheriting child. *Sparks*, 203 S.W.2d at 623–24. This treatment applies "whether the fee title to the homestead property belongs to the separate estate of either or both spouses, or to their community estate." *LeBlanc v. LeBlanc*, 761 S.W.2d 450, 453 (Tex. App.—Corpus Christi–Edinburg 1988, writ denied) (quoting *Sparks*, 203 S.W.2d at 623); *see* TEX. EST. CODE ANN. § 102.002 ("The homestead rights and the respective interests of the surviving spouse and children of a decedent are the same whether the homestead was the decedent's separate property or was community property between the surviving spouse and the decedent.").

"The surviving spouse is entitled to all 'fruits, rents, and revenues' obtained from the property during his life." *Henry*, 651 S.W.3d at 663 (quoting *Sargeant v. Sargeant*, 15 S.W.2d 589, 594 (Tex. [Comm'n Op.] 1929)). He is only entitled to reimbursement from the remainderman for paying down the principal of an encumbrance on the property that

7

existed at the time the remainderman inherited an interest in the property.[5] *Id.* (citing

*Brokaw v. Richardson*, 255 S.W. 685, 688 (Tex. App.—Fort Worth 1923, no writ)). If there

is an existing encumbrance on the property, the surviving spouse is responsible for paying

the interest on the encumbrance. *Id.* (citing *Dakan v. Dakan*, 83 S.W.2d 620, 625 (Tex.

1935)). The surviving spouse is not entitled to reimbursement for improvements to the

property or the payment of taxes. *Id.* (first citing *Sargeant*, 15 S.W.2d at 594; and then

citing *Hunter v. Clark*, 687 S.W.2d 811, 815 (Tex. App.—San Antonio 1985, no writ)).

## B.    Analysis

Murray contends that he is entitled to contribution from Robinson because she is

a joint owner of the property and thus a tenant in common. Assuming he is entitled to

reimbursement, Murray further argues that the trial court erred in not imposing an

equitable lien and ordering a sale foreclosing that lien.

A child who inherits an interest in a property for which the surviving spouse

maintains a homestead interest owns only a remainder interest during the surviving

---

[5] The Texas Estates Code further provides:

If the decedent was survived by a spouse or minor child, the homestead is not liable for the payment of any of the debts of the estate, other than:

   (1)  purchase money for the homestead;
   (2)  taxes due on the homestead;
   (3)  work and material used in constructing improvements on the homestead if the requirements of Section 50(a)(5), Article XVI, Texas Constitution, are met;
   (4)  an owelty of partition imposed against the entirety of the property by a court order or written agreement of the parties to the partition, including a debt of one spouse in favor of the other spouse resulting from a division or an award of a family homestead in a divorce proceeding;
   (5)  the refinance of a lien against the homestead, including a federal tax lien resulting from the tax debt of both spouses, if the homestead is a family homestead, or from the tax debt of the decedent;
   (6)  an extension of credit on the homestead if the requirements of Section 50(a)(6), Article XVI, Texas Constitution, are met; or
   (7)  a reverse mortgage.

TEX. EST. CODE ANN. § 102.004.

spouse's lifetime; therefore, a co-tenancy does not exist. *See Sparks*, 203 S.W.2d at 623–24. Further, contrary to Murray's contention, the relationship remains the same whether the surviving spouse still owns a portion of the homestead in fee simple due to his interest in the community estate. *See LeBlanc*, 761 S.W.2d at 453. Because Robinson possesses only a remainder interest, the laws governing tenants in common do not apply. *See Sparks*, 203 S.W.2d at 623–24. Accordingly, we hold that the trial court did not err in concluding that Robinson is not responsible for any reimbursements under this theory. *See Wood*, 650 S.W.3d at 544. Murray's arguments regarding the imposition of an equitable lien and an order of foreclosure are dependent upon his assertion of a co-tenancy relationship, and they necessarily fail for the same reasons.

In the alternative, Murray argues that, as a life tenant, he is still entitled to reimbursement for the principal reduction on the property's encumbrances and the full amount of insurance premiums paid. As previously stated, Murray is only entitled to reimbursement for paying down the principal for an encumbrance that existed at the time Robinson inherited her interest. *See Henry*, 651 S.W.3d at 663. However, the trial court found there were no liens on the property at the time of Florentina's death, and Murray does not challenge this finding on appeal. *See Pearl Res. LLC v. Charger Servs., LLC*, 622 S.W.3d 106, 115 (Tex. App.—El Paso 2020, pet. denied) ("[I]f the trial court's findings of fact are not challenged by a point of error on appeal, the appellate court is bound by them."). The encumbrances on the property were created after Florentina's death, and Robinson did not receive any proceeds from the associated loans. Therefore, we hold that the trial court did not err in concluding that Robinson is not responsible for

9

reimbursing Murray for the principal reduction. *See Wood*, 650 S.W.3d at 544.

With respect to full reimbursement of the insurance premiums, Murray cites authority stating that a life tenant is not required to maintain insurance on the property for the benefit of the remaindermen. *See Richardson v. McCloskey*, 276 S.W. 680, 684 (Tex. [Comm'n Op.] 1925); *Hill v. Hill*, 623 S.W.2d 779, 781 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.). However, Murray cites no authority, and we have found none, requiring reimbursement if the life tenant voluntarily insures the homestead property. Absent any authority to the contrary, we conclude that the trial court did not err in determining that Robinson was not responsible for full reimbursement of the insurance premiums paid by Murray for the property.[6]

Having rejected each of Murray's arguments, we overrule Murray's first issue.

### III.    UNPLEADED CLAIMS

In his second issue, Murray argues that the trial court erred in granting relief to Robinson because Robinson was required to plead as an affirmative defense that she was a remainderman rather than a co-owner of the property. Murray similarly argues that the trial court erred in granting Robinson declaratory relief in the absence of pleadings.

### A.    Standard of Review & Applicable Law

A judgment must be supported by the pleadings, and a party may not be granted relief in the absence of pleadings to support such relief. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983); *see* TEX. R. CIV. P. 301. We review de novo whether a

---

[6] We note that Robinson agreed in the trial court that she was responsible for half of the insurance premiums for the structures on the property, and she does not file a cross-appeal challenging the trial court's declaration to that effect.

10

trial court's judgment is supported by the pleadings. *Salomon v. Lesay*, 369 S.W.3d 540, 554 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

The Uniform Declaratory Judgments Act (the UDJA) empowers Texas courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM. CODE § 37.003(a); *see Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 269 (Tex. 2021). The UDJA's "purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b). Under the UDJA, a party can receive "a declaration of rights, status, or other legal relations" under certain instruments such as a deed. *Id.* § 37.004(a). "[D]eclarations under the Act can be both negative (non-liability) and affirmative (liability)." *Irwin*, 627 S.W.3d at 269 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(b)).

## B.    Analysis

In his live pleading, Murray requested "a declaratory judgment declaring the rights of the [p]arties with respect to the [p]roperty[.]" Specifically, Murray sought declarations that Robinson was responsible for reimbursement for one half of the amount Murray paid for taxes, insurance, expenses, reduction in principal on encumbrances, interest, and improvements. Murray also sought a declaration that Robinson owed reimbursement for one half of the increase in value to the property. The trial court's declarations all pertained to Murray's requested relief, albeit in the negative. *See Irwin*, 627 S.W.3d at 269; *see also Salomon*, 369 S.W.3d at 553–54 ("The trial judge is not constrained to enter judgment

11

only in a form specified by one of the parties, because in addition to conforming to the pleadings, the judgment must also reflect a correct application of the law[.]").

Because the declarations were authorized by Murray's pleadings, we conclude that the trial court did not err in entering a declaratory judgment in the absence of an affirmative defense or claim pleaded by Robinson. *See Salomon*, 369 S.W.3d at 554 ("[W]e conclude that the relief ordered by the trial court corresponds to the allegations in the parties' pleadings (a dispute about homestead rights and property ownership)."). We overrule Murray's second issue.

## IV.   CONCLUSION

We affirm the trial court's judgment.

L. ARON PEÑA JR.<br>
Justice

Delivered and filed on the
18th day of January, 2024.